*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0231P (6th Cir.)
File Name: 04a0231p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*                             No. 02-6342

DERRICK D. MOORE,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00035—Thomas B. Russell, District Judge.

Argued: March 12, 2004

Decided and Filed: July 20, 2004

Before: NELSON, MOORE, and FRIEDMAN, Circuit
Judges.*

———————————

**COUNSEL**

**ARGUED:** Larry D. Simon, SIMON & SIMON, Louisville,
Kentucky, for Appellant. Larry E. Fentress, UNITED

———————————

*  Daniel M. Friedman, Circuit Judge of the United States Court of
Appeals for the Federal Circuit, sitting by designation.

---

STATES ATTORNEY, Louisville, Kentucky, for Appellee.
**ON BRIEF:** Larry D. Simon, SIMON & SIMON,
Louisville, Kentucky, for Appellant. Larry E. Fentress, Terry
M. Cushing, UNITED STATES ATTORNEYS, Louisville,
Kentucky, for Appellee.

———————————

**OPINION**

———————————

FRIEDMAN, Circuit Judge. The appellant Derrick D.
Moore challenges his convictions for armed bank robbery,
homicide and assault during the robbery, possessing a firearm
as a convicted felon, and possessing cocaine base. He raises
various issues: that the district court should have bifurcated at
trial the felon-in-possession charge into its component
elements of possession and felony conviction; that improper
references were made during the trial to his prior conviction;
that the prosecutor had asked a witness improper questions;
that the prosecutor improperly disclosed to a witness that the
latter had identified the wrong person at a lineup; and that the
court improperly directed a supplemental interrogatory to the
jury, to determine the amount of drugs Moore possessed, after
it had announced its guilty verdict. We decide all of these
issues against Moore and affirm his convictions.

I

The evidence, the sufficiency of which Moore does not
contest, shows the following facts: Co-defendant Tiffany
Pennington committed an armed bank robbery in Louisville,
Kentucky, during which he shot and killed a bank employee.
Pennington fled in an automobile that was abandoned in a
nearby mall. A cellular phone found in the car was traced to
Pennington. Later that afternoon, Moore contacted Richard
Jewell, and the two of them retrieved the handgun used in the
robbery from a ditch. Jewell kept the gun until it was turned
over to law enforcement officers a few days later. Ballistic

tests showed that this was the gun that Pennington used during the robbery to kill the bank employee.

Police went to the house of Moore's girlfriend and interviewed Moore, who stated there were no drugs in the house. After the girlfriend consented to a search of the home, the officers found 188 grams of a substance containing crack cocaine.

Moore's connection with the bank robbery, murder and assault was two-fold. First, a few days before the robbery, Moore asked Jewell to purchase a handgun for him. He did so because, as a convicted felon, he could not legally himself purchase a firearm. Shortly thereafter, Moore drove Jewell to a pawnshop to purchase the gun; a few days later Moore and Jewell returned to the pawnshop and received the gun and ammunition.

Second, Moore was the driver of the getaway car, which Moore and Pennington had stolen earlier the same day. Two eyewitnesses identified Moore as the driver. Telephone records showed that Moore called Pennington several times on the morning of the robbery.

The district court severed the drug possession charge from the other charges, and each group of charges was tried separately to a different jury before the same judge. The district court refused to bifurcate the felon-in-possession charge into its component elements of gun possession and felony conviction, and both elements were tried and submitted to the jury together.

Pennington, who pleaded guilty, testified at Moore's bank robbery trial, admitting that he had robbed the bank and killed the bank employee. He stated that he and Moore had planned the robbery together and shared the proceeds and that Moore had driven the getaway car.

## II

A. Prior to trial, Moore moved to bifurcate the felon-in-possession charge because of the alleged prejudicial effect the introduction of evidence relating to his prior conviction could and would have on the jury. He proposed that the jury should determine only whether he possessed a handgun, and that only if the jury found that he had would his felony conviction be introduced. The district court ultimately denied that motion, reasoning that since his criminal history was relevant to the other charges, his prior conviction would inevitably be disclosed to the jury; therefore, reference to it in connection with the gun possession charge would not prejudice Moore. Moore then stipulated to his prior conviction.

The determination whether to bifurcate a particular count lies within the discretion of the district court, and we review a refusal to bifurcate for abuse of discretion. Several other circuits have held that a district court's decision against bifurcating a felon-in-possession count is reviewed for abuse of discretion. *See, e.g.*, *United States v. Belk*, 346 F.3d 305, 310 (2d Cir. 2003) ("[A] district court's exercise of its discretion in refusing to bifurcate the elements of a [felon-in-possession] charge is not reversible error."), *cert. denied*, 124 S. Ct. 1474 (2004); *United States v. Mangum*, 100 F.3d 164, 171 (D.C. Cir. 1996) ("[W]e find that the district court did not . . . abuse its discretion by deciding not to bifurcate the ex-felon element and the other elements of [the felon-in-possession count]."). In an unpublished decision, *United States v. Underwood*, Nos. 95-5441/95-5442, 1996 U.S. App. LEXIS 24995 (6th Cir. Sept. 20, 1996), this court, in upholding a district court's refusal to bifurcate the possession and felony elements of felon-in-possession counts, "adopted [the] rule" of the Ninth Circuit in *United States v. Barker*, 1 F.3d 957 (9th Cir. 1993), *amended by* 20 F.3d 365 (1994). There, in reversing a district court's bifurcation of the two elements of a felon-in-possession count, the Ninth Circuit "h[e]ld that the district court may not bifurcate the single

offense of being a felon in possession of a firearm into multiple proceedings." *Id.* at 959.

Although *Barker* appears to announce the rule that a felon-in-possession count "may not" be bifurcated at all, other decisions of the Ninth Circuit limit that principle to cases involving only a single felon-in-possession charge. *See United States v. Nguyen*, 88 F.3d 812, 817-18 (9th Cir. 1996). We need not reach that issue to decide this case, however, since we conclude that here the district court did not abuse its discretion in refusing to bifurcate. As the district court pointed out, the jury was going to learn about Moore's felony conviction apart from the felon-in-possession charge. Investigators originally linked Moore to the bank robbery through Jewell. Jewell had purchased the handgun used in the bank robbery for Moore because Moore was precluded from doing so as a convicted felon. In developing these facts, the prosecution necessarily and inevitably would refer to Moore's felony conviction.

Because that conviction was independently relevant to the proof of the bank robbery charges, the district court did not abuse its discretion in refusing to bifurcate the felon-in-possession count. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes . . . may . . . be admissible . . . as proof of . . . intent, preparation, [or] plan . . . ."); *cf. United States v. Clark*, 184 F.3d 858, 868, 866 (D.C. Cir. 1999) (holding that a district court did not abuse its discretion in refusing to sever a felon-in-possession charge from other charges where "proof of each crime would have been admissible in the separate trials").

B. Moore contends that various references at the trials to his prior felony conviction denied him fair trials and that the district court should have declared mistrials when those references were made.

1. In his opening statement, the prosecutor told the jury that they would "hear [about] a stipulation . . . that [Moore]

ha[d] been convicted of a felony." The prosecutor is also alleged to have made similar references in his closing and rebuttal statements.

We doubt that the references were improper. Because the stipulation made it unnecessary for the prosecution to prove an essential element of the crime, the prosecutor properly disclosed this fact to the jury. Moreover, the prosecutor's reference to Moore's prior felony conviction was no broader than necessary to accomplish its purpose. Indeed, after disclosing the stipulation to the jury in his opening remarks, the prosecutor told the jury that the "details" of the conviction were "not material . . . to this particular case." Finally, in its instructions to the jury, the district court admonished that they could "only consider th[e] stipulation for the very limited purpose of determining whether [Moore] had been convicted of a felony offense" and were not to "consider it for any other purpose."

Considering "the totality of circumstances," *Kincade v. Sparkman*, 175 F.3d 444, 446 (6th Cir. 1999), these comments by the prosecutor were not improper, the court gave a curative instruction, and they did not deny Moore a fair trial.

2. Detective Duncan, a lead witness for the prosecution, testified that Moore told him during the investigation that he met Pennington while the two were in prison together. He also testified that "[Moore] informed me that due to previous felony convictions[,] he was not allowed by law to purchase a handgun[, and] that he had offered Richard Jewell money if Mr. Jewell agreed to purchase the handgun." As discussed previously, this testimony was relevant to the bank robbery charges because the police initially linked Moore to the robbery through Jewell. Immediately after those statements, the district court admonished the jury that "[a]ny statements by Mr. Moore or the interviewing officer [Detective Duncan] . . . of uncharged criminal activities . . . were introduced only for the fact that those statements were made at that time" and

were not to be considered "as any evidence that Mr. Moore is guilty of [the] crimes charged . . . for which he is on trial."

The prior relationship between Moore and Pennington was relevant in proving that the two had a common plan to rob the bank. The explanation that Moore had Jewell purchase the gun because he was a convicted felon explained to the jury why Moore did not purchase the gun himself.

The situation in the present case is similar to that in *United States v. Harris*, where this court refused to reverse a conviction because a prosecution witness made a passing reference to the defendant's prior arrest. 165 F.3d 1062 (6th Cir. 1999). The witness, a law enforcement officer, testified that he had located the defendant by finding his address on a previous arrest record. *Id.* at 1065. This court's statements in rejecting the challenge to the conviction are equally applicable to the present case:

> it d[id] not appear that the government intentionally elicited the reference to [the defendant's] prior arrest; the government's line of questioning was reasonable; the district court gave an immediate and clear limiting instruction; the isolated allusion to the prior arrest was not part of a pattern indicative of bad faith; and the officer's stray remark constituted only a minuscule part of the evidence against [the defendant].

*Id.* at 1066; *see also United States v. Stotts*, 176 F.3d 880, 886-87 (6th Cir. 1999) (holding that a district court properly denied the defendant's request for a mistrial following a witness's statement that the defendant had a "'an extensive criminal record'" because "the remark was isolated and the district court gave an immediate curative instruction"); *United States v. Terry*, 729 F.2d 1063, 1070 (6th Cir. 1984) (In determining whether improper witness statements "affected the substantial rights of the defendant" to warrant a new trial, the factors to be considered are whether a "curative instruction" was sought or given, whether the references to

prior criminal activity were detailed, and whether the "statements were . . . of major import" when "compared with the other evidence" against the defendant.).

3. At the separate trial of the drug possession charge, prosecution witness deputy sheriff Kenneth Menzie, who was present during the search of Moore's girlfriend's house in which the drugs were discovered, testified that when asked whether "there were any weapons in the house," Moore "replied, [']there's no weapons in the house. I'm a convicted felon, I can't have a gun.[']" The district court immediately told the jury: "this testimony you just heard about the convicted felon, completely disregard that. That had no business being said at all. It's irrelevant. It's completely irrelevant to everything. Completely disregard it." The district then denied Moore's motion for a mistrial based on that statement. As it explained:

> In regard to the statement of Officer Menzie that the defendant had a prior felony conviction, I was just attempting to answer the Government's question. I don't believe the Government intended for him to give the answer and he didn't know what he was going to say. Anyway, there's no bad faith or intentional conduct on behalf of the Government. I think it was inadvertence. Everyboy wished it hadn't happened. I think it's such a minor part of the trial. I think my admonition will take care of it.

Although the reference to Moore's felony conviction was improper in the trial of the drug possession charge, the district court correctly denied a mistrial. The single comment, which the court immediately admonished the jury to "completely disregard," did not taint the case so as to deny Moore a fair trial. Moreover, as in *Terry*, the statement was not "of major import" when "compared with the other evidence" against the defendant. Moore had previously admitted that the drugs found in his girlfriend's house belonged to him.

C. Moore also challenges the district court's denial of a mistrial following the prosecutor's questioning of another investigator at the bank robbery trial, Steven Wight. First, the prosecutor asked Wight whether, during his investigation, he had been able to eliminate as a suspect another identified person, who Moore contended was the getaway car driver. After sustaining Moore's objection to the question, the court told the jury to "ignore the question . . . like it wasn't even asked." Shortly thereafter, the prosecutor asked Wight whether certain physical evidence taken from the getaway car was subjected to forensic analysis. Again, the court sustained Moore's objection and instructed the jury to disregard the question. Moore contends that the nature of the two questions and the proximity in which they were asked may have left the jury with the impression that forensic testing exculpated the person Moore alleged was the driver of the getaway car.

Here, as in the case of Moore's objections to other questions or statements discussed above, the district court properly denied a mistrial. The asking of these two unrelated questions, which the district court immediately told the jury to ignore, did not deny Moore a fair trial.

D. In his reply brief, Moore argues for the first time that there was prosecutorial misconduct when, shortly before trial, the prosecution told one of the eyewitnesses to the crime who testified at the trial that he had identified the wrong person during a pretrial photographic lineup. Moore offers no explanation or justification for his failure to raise this point in his forty-page opening brief. We here follow this court's normal practice of "declin[ing] to consider issues not raised in the appellant's opening brief." *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989).

### III

The drug possession charge in the indictment alleged that Moore "knowingly and intentionally possessed with intent to distribute 50 grams or more of cocaine base, also known as

'crack' cocaine," in violation of 21 U.S.C. § 841(a)(1) (2000). The court instructed the jury that if it found Moore guilty of possession with intent to distribute cocaine base, it "must also determine the amount of cocaine base involved in this crime," which would be either "(1) 50 grams or more of a substance containing a detectable amount of cocaine base," or "(2) Less than 50 grams" of such substance. *Compare* 21 U.S.C. § 841(b)(1)(A)(iii) *with* 21 U.S.C. § 841(b)(1)(B)(iii).

The court also instructed the jury on the lesser included offense of simple possession of cocaine base. It told the jury that if it found Moore not guilty of possession with intent to distribute, it "must go on to consider whether the Government has proven the lesser charge of possession of cocaine base." The court did not instruct the jury that it had to determine the amount of cocaine base if it found Moore guilty of simple possession – presumably because, during the court's reading of its proposed instructions to counsel, both of them said they "d[id]n't think" that if the jury "convict[ed] him of possession . . . they need[ed] to find [the] amount."

The jury found Moore guilty of only simple possession. The prosecutor immediately stated that it would be necessary that the amount of cocaine base Moore possessed be determined because, under the governing statute, the penalty for possession of cocaine base was greater if more than five grams were involved. 21 U.S.C. § 844(a). Moore contended that the government had waived this point by previously agreeing that if the jury found only simple possession, the amount need not be determined.

The district court, although concluding that the government probably had waived the issue, determined that any waiver was "correctable because the jury ha[d] not been dismissed," "and in looking at the greater picture of justice and the interpretation of the statute, . . . there's no prejudice to the defendant by going forward at this time and determining the amount for simple possession." The court gave the jury a supplemental instruction to determine whether the amount

Moore possessed was five grams or more or less than five grams. The jury again retired, and five minutes later returned, finding that the government had proved beyond a reasonable doubt possession of five grams or more of cocaine base.

The district court properly gave the jury the supplemental instruction to determine the amount of crack cocaine Moore had possessed. The procedure followed in this case to determine that amount did not prejudice Moore. If the original instructions had required the jury to make that finding, the jury would have included in its original verdict the supplemental finding it subsequently made: that Moore possessed more than five grams of crack cocaine. The statute provides a mandatory sentence of at least five years imprisonment for simple possession of more than five grams of crack cocaine. *Id.* The prosecutor thus correctly pointed out that "[a] determination will have to be made at some time of the amount for sentencing purposes" and "[w]e can certainly put on proof as to the amount at sentencing."

As Moore recognizes, "[t]he standard of review for a supplemental charge to a jury under these circumstances is abuse of discretion." Appellant's Br. at 39. A district court has broad discretion to supervise, control, and determine the issues the jury is to decide and the manner in which it is to do so. *See United States v. Hiland*, 909 F.2d 1114, 1136-37 (8th Cir. 1990) (stating that a federal district court that gave "supplemental charge[s]" to correct a "verdict [that] was ambiguous due to the wording of the instructions" had "authority to require redeliberation in cases in which there [was] uncertainty, contingency, or ambiguity regarding the jury's verdict"). Considering all the circumstances, the district court did not abuse its discretion here in concluding that the government was "entitled to have the amount determined beyond a reasonable doubt by a jury."

## CONCLUSION

The judgment of the district court is affirmed.