*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.

No. 04-5150

PATRICK WAYNE MADDEN,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 03-00015—David L. Bunning, District Judge.

Argued: March 9, 2005

Decided and Filed: April 4, 2005

Before: BOGGS, Chief Judge; COOK, Circuit Judge; BEER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Ryan D. Walters, JONES DAY, Columbus, Ohio, for Appellant. Nicholas A. Marsh, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Ryan D. Walters, William W. Patmon III, JONES DAY, Columbus, Ohio, for Appellant. Nicholas A. Marsh, Richard C. Pilger, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

COOK, J., delivered the opinion of the court, in which BEER, D. J., joined. BOGGS, C. J. (pp. 5-6), delivered a separate opinion concurring in part and dissenting in part.

_____

## OPINION

_____

COOK, Circuit Judge. Patrick Wayne Madden appeals his conviction and sentence for violating the federal vote-buying statute, 42 U.S.C. § 1973i(c). Because Madden's plea agreement waived his right to challenge his conviction, we dismiss that aspect of his appeal. As regards his sentence, we conclude that the district court erred by applying the vulnerable-victim enhancement. We therefore remand for resentencing.

---

[*]The Honorable Peter Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

I

Madden paid three people to vote for a candidate for local office in a primary election. Because the ballot included candidates for United States Senate—though Madden did not offer anyone money to vote for a Senate candidate—the government charged Madden with violating the federal vote-buying statute.

Madden pleaded guilty to one count of vote-buying pursuant to a written plea agreement. Part of the agreement provided: "The Defendant waives the statutory right to appeal the guilty plea and conviction." Despite waiving this right, Madden now challenges his conviction, arguing that the statute does not prohibit buying votes for non-federal candidates, or, if it does, the statute is unconstitutional.

Madden's plea allows an appeal of his sentence, and, in that regard, Madden targets enhancements and a *Booker* Sixth Amendment violation as sentencing errors by the district court.

II

A.  Madden Waived His Right to Appeal His Conviction

Madden's plea agreement foreclosed appeal of his conviction, and this court enforces such waivers.  *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996).  Madden nevertheless seeks to avoid the consequences of his plea by styling his conviction challenge as jurisdictional, advancing both a statutory and a constitutional argument.  He first posits that § 1973i(c) prohibits only buying votes for federal candidates—a prohibition not violated by his conduct.  In the alternative, Madden says that if § 1973i(c) does criminalize buying votes for state or local candidates, then the statute is unconstitutional.  According to Madden's theory, federalism principles deprive Congress of the power to criminalize buying votes for candidates in state or local elections because the mere presence of a federal candidate on the same ballot is an insufficient federal interest to give Congress regulatory power.  Madden thus reasons that the district court lacked jurisdiction to convict him for vote buying—where he bought votes only for local candidates—either because Congress did not intend to prohibit such vote buying or because Congress lacks the power to prohibit such vote buying.

Madden confuses congressional power to criminalize conduct with federal subject-matter jurisdiction.  Even if the vote-buying statute fails the sufficient-federal-interest test, such a non-jurisdictional challenge is waived by Madden's plea agreement.  The district court's power to convict Madden comes from its jurisdiction "of all offenses against the laws of the United States." 18 U.S.C. § 3231.  Madden pleaded guilty to violating § 1973i(c)—an offense against the United States.

In *United States v. Rayborn* this court considered a similar subject-matter jurisdiction argument, and reversed a district court's dismissal of an arson prosecution.  312 F.3d 229, 231 (6th Cir. 2002).  The district court decided it lacked subject-matter jurisdiction to hear the case because the building burned by the defendant was not "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," as required by 18 U.S.C. § 844(i).  But this court held that § 844(i)'s interstate-commerce requirement, while an element of the crime, was not a prerequisite for the district court's subject-matter jurisdiction.  *Id.* ("Although the interstate commerce requirement is frequently called the 'jurisdictional element,' it is simply one of the essential elements of § 844(i).  It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, *i.e.*, a court's constitutional or statutory power to adjudicate a case."); *see also Hugi v. United States*, 164 F.3d 378, 380–81 (7th Cir. 1999) ("A link to interstate commerce may be essential to Congress's substantive authority . . . but the existence of regulatory power differs from the subject-matter jurisdiction of the courts.").  Thus, even if we assume that Congress lacks

the power to punish non-federal candidate vote buying, such a constitutional infirmity in § 1973i(c) would not deprive the district court of subject-matter jurisdiction to accept Defendant's guilty plea.

## B.  Sentencing Issues

### 1.  Supervisory-Role Enhancement

The district court applied the U.S.S.G. § 3B1.1(c) supervisory-role enhancement and increased Madden's base offense level by two levels.  Madden argues that applying the supervisory-role enhancement constitutes impermissible double counting because the supervision he exercised was no more than necessary to establish a vote-buying offense.  Madden's argument fails, however, because the mere act of paying for a vote violates § 1973i(c) regardless of the degree of supervision the vote buyer provides.  Here, Madden did more than merely pay for votes; he also transported voters to the polls and, in the case of one vote seller, voted that person's ballot.  Hence, the district court properly applied the supervisory-role enhancement.

### 2.  Vulnerable-Victim Enhancement

Madden next argues that the district court erred by applying the vulnerable-victim enhancement under U.S.S.G. § 3A1.1(b)(1), which provides a two-level enhancement if "the defendant knew or should have known that a victim of the offense was a vulnerable victim." Madden acknowledges that he knew the mentally ill people who sold their votes were vulnerable, but maintains they were not victims because they received fifty dollars for their votes.

Although we have found no precedent directly on point, we agree that the vote sellers here were not "victims" for Guidelines purposes.  The Guidelines elsewhere acknowledge that for some crimes, including drug offenses, the victim is "society at large," rather than any individual.  U.S. Sentencing Guidelines Manual § 3D1.2, cmt. n.2 (2004).  If a drug buyer—who chooses to harm himself through drug consumption—is not a "victim," then neither is someone who accepts payment for his vote.  The vote-buying statute protects "society at large" from corruption of the electoral process; it does not protect, but rather restrains, individuals who value money more highly than their right to vote in a given election.  Therefore, the vulnerable-victim enhancement was inappropriate here, because the alleged victims were not victims at all.

The cases Chief Judge Boggs cites in his partial dissent to support his contrary view are distinguishable from this case.  *United States v. Mautner* is, of course, unpublished and non-binding, and involved mail fraud, a crime that always involves at least one victim.  No. 97-3596, 1999 WL 55273 (6th Cir. Jan. 13, 1999).  *Mautner* simply affirmed the district court's factual finding that particular individuals were victims—it did not address, as we do, the purely legal question of whether a particular crime can have victims at all.

In *United States v. Gawthrop*, the district court concluded that a vulnerable-victim enhancement was appropriate not for the offense of conviction, but for other "relevant conduct," including sexual abuse.  310 F.3d 405, 410–11 (6th Cir. 2002).  Here, in contrast, the district court proceeded as though the "victims" were victims of the offense of conviction itself.  And we conclude as a legal matter that Madden's crime of vote-buying can have no victim other than society at large.

In *United States v. Amedeo*, the defendant violated 21 U.S.C. § 859(a), which punishes drug sales to individuals under age twenty-one more severely than federal law punishes ordinary drug sales.  370 F.3d 1305, 1309 (11th Cir. 2004).  Thus, the defendant was convicted under a statute that contemplated a victim—the minor drug buyer (as "minor" was defined at the time of the law's 1970 enactment).   The Mann Act similarly exists to protect a particular class of people: women supposedly forced into prostitution.  *See Wyatt v. United States*, 362 U.S. 525, 530 (1960) ("As the legislative history discloses, the [Mann] Act reflects the supposition that the women with whom it

sought to deal often had no independent will of their own, and embodies, in effect, the view that they must be protected against themselves.").

As for the argument that this case resembles one of "voter intimidation and coercion," Madden was not convicted of that crime—he was convicted only of buying votes. And the fact that he paid his "victims" fifty dollars each suggests, if anything, a *lack* of intimidation or coercion.

Because the district court erred by applying the vulnerable-victim enhancement, we remand for resentencing. This remand makes it unnecessary for us to address Madden's *Booker* arguments because, on remand, the district court must apply the Guidelines in light of *Booker*.

### III

We dismiss Madden's appeal of his conviction, and we vacate Madden's sentence and remand for resentencing.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

BOGGS, Chief Judge, concurring in part and dissenting in part. I concur in all of the court's opinion in this case, except for section II.B.2, reversing the district court's vulnerable-victim enhancement. I believe that the district court committed neither legal error nor clear factual error in imposing the enhancement, and so I respectfully dissent in part.

Madden's sentence was enhanced under USSG §3A1.1(b)(1) because the district court concluded that he knew or should have known that a victim of the offense was a vulnerable victim. In this case, the relevant vulnerable victims were Eddie and Kenny Ambergee, two of the people from whom Madden bought votes. These two individuals both suffer from mental impairments. Eddie Ambergee is schizophrenic and Kenny Ambergee is manic depressive. On appeal, Madden does not challenge that these two individuals were particularly vulnerable.[1] Instead, he questions whether they were victims.

The question of who can be a victim for purposes of the vulnerable-victim enhancement is a legal question that we review de novo. *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2002). However, as required by *Buford v. United States*, 532 U.S. 59 (2001), the question of whether the vote sellers in this case were, in fact, victims is an application of the Sentencing Guidelines to facts, which we review for clear error. *See United States v. Webb*, 335 F.3d 534, 537 (6th Cir. 2003) ("this court has held that our standard of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should not be disturbed unless clearly erroneous."). In *Buford*, the Court reasoned that deference should be given to the district court's determination of whether multiple convictions were related under USSG §4B1.2(c) because "of the fact-bound nature of the legal decision, the comparatively greater expertise of the District Court [in making factual determinations], and the limited value of uniform court of appeals precedent." *United States v. Humphrey*, 279 F.3d 372, 379 n.4 (alteration in original) (quoting *Buford*, 532 U.S. at 66). The same concerns predominate here. Whether individuals are actually harmed is a fact-intensive determination for which the district court is better-equipped. Given the unique outcomes such a fact-intensive question will generate, the need for uniform appellate treatment is diminished. Therefore, I believe this court must deferentially review the district court's determination that Eddie and Kenny Ambergee were victims.

I begin with the purely legal question of whether people who sell their votes can be victims, and therefore vulnerable victims under §3A1.1(b)(1), of the offense of vote buying. A vulnerable victim can be any person who is "a victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct)." USSG §3A1.1, comment. (n.2). Therefore, a vulnerable-victim enhancement can be based on the offense of conviction *or* "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." USSG §1B1.3(a)(1); *see United States v. Gawthrop*, 310 F.3d 405, 408-12 (6th Cir. 2002) (basing a vulnerable-victim enhancement on only defendant's relevant conduct). There is nothing in §3A1.1(b)(1) that limits consideration of the enhancement to the commonly identified victims of the offense. Accordingly, in *Gawthrop*, this court treated the grandchild of an owner of child pornography as a victim because she had been exposed to the pornographic pictures,

---

[1] Though Madden raises such an argument in his reply brief, any arguments presented for the first time in a reply brief are waived before this court. *United States v. Moore*, 376 F.3d 570, 576 (6th Cir. 2004). Even were we to review the argument, as the below discussion indicates, we would review the district court's conclusion on particular vulnerability only under the "clearly erroneous" standard. *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2002).

despite the victims in child-pornography cases generally being society or the children depicted in the pornography. *Id.* at 410-12.

Therefore, while the federal law prohibiting vote buying may generally be aimed at protecting society at large, the possible victims from the conduct of defendants relevant to their vote buying is not so limited. When individuals' votes are bought, the Fifth Circuit has observed, "voters are brought to the polls who otherwise might not have voted at all." *United States v. Malmay*, 671 F.2d 869, 875 (5th Cir. 1982). "Aside from being ready instruments of further manipulation, their presence distorts the total, leaves to chance the federal candidates who might – or might not – receive their vote, distorts the results, and is, therefore, repugnant to the integrity of the elective process." *Ibid.* In general, then, the prohibition on vote-buying protects the integrity of elections and, accordingly, society at large. Yet the conduct of a vote buyer can have harmful effects besides this evil, and the Sentencing Guidelines instruct us to consider all of a defendant's relevant conduct in reviewing whether someone was a victim.

When Eddie and Kenny Ambergee sold their votes, these two men lost something of great value, the right to vote independently. Indeed, as the Supreme Court has frequently stated, "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964), *quoted in Burdick v. Takushi*, 504 U.S. 428, 441 (1992) and *Burson v. Freeman*, 504 U.S. 191, 199 (1992). Even if these individuals may have sold their votes willingly, that fact does not foreclose the possibility of harm. This court has recognized that even seemingly willing decisions can leave individuals harmed and, thus, make them vulnerable victims. *See United States v. Mautner*, No. 97-3596, 1999 WL 55273, at \*1, \*4 (6th Cir. Jan. 13, 1999) (per curiam) (unpublished opinion) (affirming vulnerable-victim enhancement because defendant enticed individuals to take out educational loans for schooling they were ill-prepared to complete). Our sister circuits have acted similarly, construing as a victim a prostitute in prosecutions under the Mann Act, *see, e.g.*, *United States v. Evans*, 285 F.3d 664, 673 (8th Cir. 2002), and, in a drug distribution prosecution, a drug addict who accepted drugs, *see United States v. Amedeo*, 370 F.3d 1305, 1317 (11th Cir. 2004). In addition, because of their impairments, Eddie and Kenny Ambergee may not have believed they were free to turn down or resist Madden's offer. In that way, Madden's behavior in this particular case resembles voter intimidation and coercion, an obvious harm that federal law strongly and properly prohibits. *See* 42 U.S.C. §§ 1971(b), 1973i(b).

Having determined that the Sentencing Guidelines do not foreclose a vulnerable-victim enhancement in this case, I need ask only whether the district court clearly erred in determining that Eddie and Kenny Ambergee were vulnerable victims. In this case, the district court determined that the brothers were targeted because of their vulnerability. Because the discussion before the district court centered on whether Eddie and Kenny could be victims despite their roles in the offense, an argument conceded on appeal, the district court failed to explicitly state its reasons for determining the brothers were victims. However, a review of the record does not indicate that the district court's conclusion was clearly erroneous. Madden not only approached Eddie, a paranoid schizophrenic, about selling his vote, but also accompanied him into the voting area and filled out his ballot. For these reasons, I would hold the district court did not err in applying the Sentencing Guidelines.