**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0513n.06

No. 08-1110

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>On Appeal from the United States</td></tr>
<tr><td></td><td>)</td><td>District Court for the Western</td></tr>
<tr><td>ROBERT W. STOKES,</td><td>)</td><td>District of Michigan</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td></td></tr>
</table>

**FILED**
**Aug 16, 2010**
LEONARD GREEN, Clerk

Before:     BOGGS, MOORE, and GIBSON,[*] Circuit Judges

BOGGS, Circuit Judge. Following a jury trial, Dr. Robert W. Stokes ("Stokes") was convicted of thirty-one counts of health-care fraud, and sentenced to 126 months of imprisonment. Stokes now appeals his conviction on the grounds that the district court erroneously admitted government evidence relating to past audits conducted by medical insurers. Stokes appeals his sentence on the grounds that the district court erroneously applied the Sentencing Guidelines' 250-victim and vulnerable-victim enhancements, and on the grounds that the court afforded the Sentencing Guidelines excessive weight in determining his sentence. We hold that the district court did not abuse its discretion by admitting the complained-of evidence against Stokes and, therefore, affirm his conviction. We conclude, however, that the district court clearly erred in applying the

---

[*]The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

vulnerable victim enhancement, and thus vacate Stokes's sentence and remand the case to the district court for resentencing.

**I**

Dr. Robert W. Stokes was a licensed, board-certified dermatologist who practiced medicine in Grand Rapids, Michigan. In 2001, federal agents began an investigation into Stokes's billing practices to determine whether Stokes was up-coding certain outpatient surgical procedures–that is, billing Medicare and insurers for more expensive procedures than he actually performed. This investigation revealed significant improprieties in Stokes's billing practices. In particular, Stokes frequently billed "shaved excisions" as more costly "full-thickness excisions," and likewise billed less complex closure techniques as expensive "adjacent tissue transfers." Stokes also often billed for both an office visit and a surgical procedure on the same day–a practice that insurers normally prohibit–by indicating that he was also treating surgical patients for impetigo. Based on the results of this investigation, a federal grand jury returned an indictment charging Stokes with multiple counts of health-care fraud.

Prior to trial, the government notified Stokes that it intended to utilize correspondence and audit notifications (the "audit evidence") to show Stokes's knowledge of relevant billing rules and specific intent to defraud. This evidence, in relevant part, fell into two general categories: (1) letters from insurance providers addressing relevant billing rules and questioning Stokes' above-average surgical billings; and (2) documents and testimony concerning audit notifications that Blue Cross Blue Shield of Michigan (BCBSM) sent to Stokes in 2000 and 2002.

Stokes responded with a motion in limine to exclude the audit evidence. The district court rejected this motion, concluding that "evidence of prior warnings is relevant as to the defendant's knowledge and intent." To prevent the jury from making improper use of the audit evidence, however, the court required the government to prepare stipulations and redacted versions of documents that would properly limit the information available to the jury.

At trial, Stokes asserted good faith as his defense: he contended that all improper billing was a product of honest mistakes, not of an intent to defraud. To rebut this defense, the government presented the redacted audit evidence and stipulations. The government also called a BCBSM employee to testify regarding relevant portions of audit notices sent to Stokes in 2000 and 2002. Each time the government presented such audit evidence, the court issued instructions to the jury indicating that the evidence only served as evidence of the defendant's knowledge and intent. Similarly, the district court included a limiting instruction in its charge to the jury that detailed the permissible and impermissible uses of the audit evidence.

Following the presentation of evidence, the jury found Stokes guilty of thirty-one counts of heath-care fraud. The district court then proceeded to determine Stokes's sentence. It began by calculating the applicable advisory Guidelines range. Counting Stokes's patients amongst his victims, the district court applied a six-level enhancement for an offense involving 250 or more victims, as provided by USSG §2B1.1(b)(2)(C). The court concluded, however, that the full six-level enhancement was disproportionate to the pecuniary harm suffered by Stokes's patients, and thus it departed downward two levels. The district court also found that USSG §3A1.1(b)(1)'s two-level vulnerable-victim enhancement applied to Stokes, apparently based on "the nature of the

relationship between . . . a patient and a physician." After factoring in these and other enhancements, the district court reached a total offense level of 32 , yielding an advisory Guidelines range of 121 to 151 months of imprisonment.

Noting that "the guidelines are advisory," the court then proceeded to consider the 18 U.S.C. § 3553 sentencing factors, as well as Stokes's request for a variance based on his "exemplary" life. The court decided not to grant such a variance. Taking into account the § 3553 sentencing factors, the court determined that a sentence of 126 months of imprisonment was appropriate. Stokes timely appealed.

## II

### A

On appeal, Stokes challenges his conviction on the grounds that the district court erroneously admitted the audit evidence against him. He first argues that the audit evidence was inadmissible hearsay. Although the district court admitted the audit evidence only to show Stokes's knowledge of auditors' warnings and guidance, Stokes asserts that the district court could not so neatly cabin the evidence. In Stokes's view, the auditors' statements could only have given him notice of the defects in his billing if he accepted those statements as true. Accordingly, Stokes believes that the audit evidence only demonstrated that he possessed relevant knowledge if the jury accepted the truth of the auditors' out-of-court statements.

This court reviews a district court's hearsay determinations for abuse of discretion. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 378 (6th Cir. 2009). The rule against hearsay prohibits the admission of "a statement, other than one made by the declarant while testifying at the trial or

hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801, 802; *see also United States v. Blackwell*, 459 F.3d 739, 755 (6th Cir. 2006). It does not, however, prohibit admission of an out-of-court statement for purposes other than proving the truth of the matter asserted. *Stalbosky v. Belew*, 205 F.3d 890, 895 (6th Cir. 2000). Rather, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801 advisory committee's note to subdivision (c); *see also Stalbosky*, 205 F.3d at 895. Accordingly, an out-of-court statement is not hearsay if it is offered only to show that a party had knowledge of its contents. *Stalbosky*, 203 F.3d at 895; *United States v. Johnson*, 71 F.3d 539, 543 (6th Cir. 1995).

In this case, the district court properly admitted the audit evidence to show that Stokes had knowledge of auditors' warnings and guidance. Contrary to appellant's argument, the jury did not need to accept the truth of the auditors' assertions to conclude that Stokes had relevant knowledge. Without determining the veracity of the auditors' statements, the jury could have concluded that Stokes, having read the auditors' statements, was aware of questions concerning his billing practices and had received guidance that contradicted his current methodology. The jury could then have interpreted Stokes's decision to disregard the auditors' concerns in one of two ways: (1) as an innocent decision based on his honest belief that he was using the correct billing method, or (2) as evidence that he deliberately disregarded the coding rules. The jury's choice of interpretation did not necessarily rest upon any assumption regarding the truth of the auditors' statements. Rather, the jury may well have chosen its interpretation based on the sheer number of warnings that Stokes

ignored.[1]  Thus, by use of an appropriate limiting instruction, the district court was able to properly

cabin the audit evidence.  As a result, the district court acted within its discretion when it determined

that the audit evidence fell outside the rule against hearsay.[2]

**B**

Stokes next argues that the audit evidence was impermissible "other acts" evidence admitted

in violation of Federal Rule of Evidence 404(b).  He argues that his "disputes" with insurers were

not genuinely material to any fact in the case.  Instead, they merely served as impermissible character

evidence that bolstered the government's theory of guilt.  Further, even if the audit evidence was

material to some issue in the case, Stokes argues that the danger that the jury would misuse the

evidence far outweighed the evidence's probative value.  Finally, according to Stokes, the judge's

limiting instructions to the jury could not prevent misuse, and, even if they could, the instructions

themselves were inadequate.

This court reviews a district court's Rule 404(b) determinations for abuse of discretion.

*United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004); *see also General Electric Co. v. Joiner*,

522 U.S. 136, 141 (1997) ("[A]buse of discretion is the proper standard of review of a district court's

---

[1]If multiple sources repeatedly warn about the same issue, a decision to ignore them without reassessing current practices or consulting a reliable authority takes on a more sinister quality.

[2]Because we find that the audit evidence was not used as hearsay, we do not address appellant's argument that admission of the audit evidence violated his Sixth Amendment confrontation right.  *See United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005) ("The admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause.  Instead, the statement must be used as hearsay–in other words, it must be offered for the truth of the matter asserted.").

evidentiary rulings."); *but see United States v. Ayoub*, 498 F.3d 532, 547 (6th Cir. 2007) (reviewing for clear error the district court's determination that the "other act" took place, de novo the district court's determination that the evidence was admissible for a proper purpose, and for an abuse of discretion the district court's determination regarding the probative value of the evidence). Rule 404(b) prohibits the admission of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Yet it permits admission of such evidence for other purposes, including as proof of intent, knowledge, or absence of mistake. Fed. R. Evid. 404(b). This court has outlined a four-step process for the admission of Rule 404(b) evidence:

> First, the proponent of the evidence must identify the specific purpose of the 'other acts' evidence. Second, the district court must decide whether the identified purpose is at issue in the case. Third, if the purpose is at issue, the district court must weigh the probative value against the danger of unfair prejudice. Finally, if the district admits the evidence, it must then clearly instruct the jury as to the purpose for which the jury may consider the evidence.

*United States v. Abboud*, 438 F.3d 554, 581 (6th Cir. 2006) (citations omitted).

In this case, the district court properly completed all four steps of this process when it admitted the audit evidence. First, the district court correctly concluded that the audit evidence served permissible 404(b) purposes. The audit evidence demonstrated that Stokes received warnings and guidance regarding his billing practices. Stokes's decision to disregard the warnings and persist in his existing practices tended to suggest that Stokes knew of and intended the mis-billings that he perpetrated–that is, his erroneous billings were not the product of an honest mistake. Accordingly, the audit evidence was probative with regard to three 404(b) purposes: it tended to show (1) knowledge, (2) intent, and (3) absence of mistake.

The district court also correctly determined that these three purposes were at issue. Health-care fraud requires proof of intent to defraud. *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007). Far from conceding such intent, Stokes asserted a defense of good-faith mistake, thereby placing knowledge, intent, and absence of mistake at issue.

Next, the district court rightly concluded that the probative value of the audit evidence outweighed its potential prejudicial impact. Stokes's decision to persist in the same billing practices after receiving repeated complaints served as relatively strong evidence that he acted with the required knowledge and intent. Although there was some danger that the jury would misuse the evidence to make improper character-related inferences, that danger always exists with Rule 404(b) evidence. Admittedly, the similarity between the audit evidence and the charged crimes may have increased the risk of misuse. Yet this court "give[s] the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Seymour*, 468 F.3d 378, 386 (6th Cir. 2006). Under this standard, the audit evidence simply did not create a sufficient danger of unfair prejudice to outweigh its potential probative value. *C.f. United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009) (finding, in a case where the defendant asserted ignorance of wrongdoing as a defense, that the probative value of a report tending to show the defendant's knowledge of past violations outweighed the prejudice that arose from the similarity of the past violations to the charged crime).

Finally, the district court issued appropriate instructions to the jury regarding the permissible uses of the audit evidence. Each time the government offered the audit evidence, the judge carefully and clearly explained the purpose of the evidence to the jury. The court's final charge to the jury

utilized the Sixth Circuit's pattern criminal jury instruction with only minor modifications. *See* Comm. on Pattern Criminal Jury Instructions, District Judges Association*, Sixth Circuit, Pattern Criminal Jury Instructions* (rev. 2008). These instructions adequately cabined the jury's consideration of the audit evidence. Further, because the audit evidence did not pose an unusually high danger of unfair prejudice, the district court had no reason to doubt that jurors would obey their instructions. *C.f. United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir 2001) (recognizing a "presumption that jurors follow their instructions").

The district court thus did not abuse its discretion when it found the audit evidence admissible under Rule 404(b).

## C

The district court did not abuse its discretion by admitting the audit evidence, and there is thus no basis to reverse appellant's conviction.

## III

Stokes challenges his sentence on three separate grounds, all pertaining to its procedural reasonableness. This court reviews a district court's sentencing determinations for reasonableness. *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007). Reasonableness review includes both substantive and procedural components. *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008). In assessing procedural reasonableness, this court focuses on whether the district court properly considered the factors set forth in 18 U.S.C. § 3553(a). *Ibid*. One of these factors is consultation of the Sentencing Guidelines and correct calculation of the Guidelines range. 18 U.S.C. § 3553(a)(4). The district court acts unreasonably if it assigns undue weight to the Guidelines and

treats them as mandatory. *Moon*, 513 F.3d at 539. The district court also acts unreasonably when it misinterprets the Guidelines or miscalculates the applicable Guidelines range. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). In assessing whether the district court has properly applied the Sentencing Guidelines, this court reviews the district court's factual findings for clear error and gives due deference to the district court's application of the Guidelines to the facts. *Moon*, 513 F.3d at 539-40. The court reviews the district court's legal conclusions regarding the Sentencing Guidelines *de novo.* *Id.* at 540.

## A

Stokes first challenges the district court's application of the 250-victim enhancement authorized by USSG §2B1.1(b)(2)(C). He argues that it was improper for the district court to count his patients among his victims, as the only victims of health-care fraud are health-care benefit programs. Even if his patients did properly count as victims, appellant asserts that there was insufficient evidence to support a factual finding that 250 patients suffered pecuniary harm. Finally, assuming that there was sufficient evidence that 250 patients suffered harm, appellant argues that the resulting enhancement was grossly disproportionate to the harm alleged. According to Stokes, he should have fallen within a "*de minimis*" exception to the 250-victim rule, or at least should have received a substantial downward departure.

USSG §2B1.1(b)(2)(C) provides for a six-level enhancement if the defendant perpetrated a fraud on "250 or more victims." The commentary to §2B1.1 defines "victim" to include "any person who sustained any part" of the "reasonably foreseeable pecuniary harm that results from the offense." USSG §2B1.1, comment. (nn.1, 3). The district court concluded that this definition was broad

enough to include patients who pay excessive copays and fees as a result of health-care fraud. We agree. For the purposes of §2B1.1(b)(2), the definition of "victim" is not tethered to the elements of any particular offense.[3] So long as a person suffers reasonably foreseeable pecuniary harm as a result of an offense, he qualifies as a victim. Since it is reasonably foreseeable that patients will pay elevated copays and fees as a result of health-care fraud, patients who suffer such pecuniary harm count amongst the victims of the fraud. *Cf. Moon*, 513 F.3d at 541 (finding that patients can qualify as victims of health-care fraud for the purposes of USSG §3A1.1(b)(1)).

We also find no clear error in the district court's factual conclusion that 250 of Stokes's patients were, in fact, victims of his fraud. When a district court relies on its own findings of fact in calculating a Guidelines range, it must base its findings on reliable information and a preponderance of the evidence. *United States v. Yagar*, 404 F.3d 967, 972 (6th Cir. 2005). In this case, the government presented BCBSM and Medicare records indicating that, over a five-year period, Stokes filed claims for the treatment of impetigo in over 1000 of his patients. Given expert testimony on the rarity of impetigo, it was fair for the district court to conclude that, more likely than not, most (and certainly more than one-quarter) of these claims were false. Both Medicare and BCBSM required their insureds to pay either a copay or a portion of their medical bill, and no

---

[3]Appellant appears to believe that *United States v. Madden*, 403 F.3d 347 (6th Cir. 2005), stands for the proposition that each criminal statute protects only a specified class of victims to the exclusion of all others. This is incorrect. *Madden* merely recognizes that certain crimes like vote buying do not involve harm to any identifiable person, meaning that their only victim is "society at large." *See Madden*, 403 F.3d at 350 (suggesting that vote buying results in a net gain from the vote seller's perspective). In contrast to vote buying, health-care fraud does involve harm to identifiable victims: both health-care benefit programs and patients suffer pecuniary loss as a result of health-care fraud.

evidence suggested that Stokes excused his patients from making these payments. Thus, even assuming that supplemental insurance covered some of these fees, there was sufficient evidence to support the district court's finding that Stokes had probably collected elevated copays and fees from over 250 patients.

Finally, we do not believe that the enhancement imposed under §2B1.1(b)(2)(C) was "grossly disproportionate" to the harm done. First, contrary to appellant's belief, there is no "*de minimis*" exception to the 250-victim enhancement.[4] The commentary to §2B1.1 makes it clear that "any person who sustained *any part* of the actual loss" counts as a victim for the purposes of §2B1.1(b)(2)(C). USSG §2B1.1 comment. (n.1) (emphasis added). No dollar minimum applies–the 250-victim enhancement concerns itself entirely with the number of individuals victimized, not with the degree to which each victim suffered harm. To the extent that the resulting enhancement overstates the seriousness of the offense, the Guidelines address the problem not by creating a *de minimis* exception, but by authorizing the district court to depart downward, which the court did. *See* USSG §2B1.1 comment. (n.19).[5]

---

[4]Application Note 3(D) does provide that the term "loss" excludes "interest of any kind, late fees, penalties, amounts based on agreed-upon return . . . , or other similar costs" as well as "costs to the government of . . . the prosecution and criminal investigation of an offense." USSG §2B1.1 comment. (n.3). This indicates that individuals who suffer only these types of losses do not qualify as victims (*i.e..*, because they do not suffer "actual loss"), but it does not disqualify all individuals who suffer minimal losses from constituting "victims."

[5]Appellant suggests that *United States v. Yagar* recognized a *de minimis* exception to the definition of "victim" under the Guidelines, but *Yagar* did no such thing. Rather, *Yagar* held that individuals whose losses were "short-lived and *immediately* covered by a third-party" did not suffer pecuniary harm or actual loss, and therefore did not qualify as victims. *Yagar*, 404 F.3d at 971 (emphasis added). *Yagar* focused not on the size of the loss, but on the practical effect of the result

Second, appellant's proportionality argument misconceives the purposes of Section 2B1.1(b)(2). That section seeks to penalize defendants purely for the scope of their fraud, not for its dollar value.[6] The six-level enhancement for injuring 250 or more victims embodies the sentiment that a defendant's brazen willingness to harm a large number of people alone merits a substantial sentence increase. To the extent that Stokes demonstrated such willingness to harm a large number of his patients, a six-level enhancement–and, by implication, the four-level enhancement actually imposed by the court–was proportionate to the wrong done. Moreover, the "extent of a downward departure" is within the district court's "complete discretion" and thus outside the scope of this court's review. *United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005). The district court acted within that discretion when it concluded that the circumstances did not warrant more than a two-level downward departure.

In sum, we find no error in the district court's application of the 250-victim enhancement.

**B**

Appellant next asserts that the district court should not have applied the vulnerable-victim enhancement authorized by USSG §3A1.1(b)(1). Appellant argues that the district court clearly erred when it found that the doctor-patient relationship was alone sufficient to justify imposition of the vulnerable-victim enhancement.

---

of the offense conduct–in *Yagar*, the individuals suffered no loss as a result of the offense conduct.

[6]Indeed, §2B1.1(b)(1) provides a separate enhancement based on the dollar value of the defendant's fraud.

USSG §3A1.1(b)(1) provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." The associated commentary defines a vulnerable victim as "a person (A) who is a victim of the offense of conviction . . . and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG §3A1.1 comment. (n.2). The district court concluded that Stokes's patients were "vulnerable victims" because the nature of the doctor-patient relationship rendered them particularly susceptible to fraud.[7]

This conclusion was clearly erroneous. A relationship alone can render a victim "particularly susceptible to criminal conduct." *United States v. Gawthrop*, 310 F.3d 405, 410 (6th Cir. 2002). But there is a limited "range of relationships upon which a finding of victim vulnerability can be predicated," *id.*, and that range thus far extends only to familial or quasi-familial relationships. *United States v. Gawthrop*, 310 F.3d 405, 410 (6th Cir. 2002) (grandfather-granddaughter relationship); *see also United States v. Niece*, 9 F.3d 110 (table), 1993 WL 424960, at *9 (6th Cir. Oct. 19, 1993) ("father figure-daughter" relationship). Broadening that range to include the traditional doctor-patient relationship would create two major problems:

> First, it would suggest a *per se* rule that the enhancement is applicable whenever a doctor [commits any crime that harms his patients]. All patients are vulnerable to their physician to a certain extent, yet § 3A1.1 intends to punish a criminal who

---

[7]The nature of the relationship between the perpetrator and the victim is not, of course, the only basis upon which a court may impose the vulnerable-victim enhancement. Other circumstances, such as the age, infirmity, or mental condition of the victim, may provide grounds for applying the enhancement. USSG § 3A1.1 comment. (n.2). For example, it may be appropriate to enhance a defendant's sentence where "the defendant marketed an ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim." *Ibid.* The district court, however, did not find that such an alternative basis for imposing the vulnerable-victim enhancement existed.

> [preys upon] victims that are especially susceptible to the perpetrator's criminal design. . . . Second, to the extent that this application would hold that the element of trust inherent in the doctor/patient relationship itself made the patients vulnerable victims . . ., it would [meld the vulnerable-victim enhancement with the §3B1.3 abuse-of-position-of-trust enhancement and therefore risk] impermissible double counting . . . .

*United States v. Singh*, 54 F.3d 1182, 1193 n. 7 (4th Cir. 1995). Accordingly, we hold that the traditional doctor-patient relationship, on its own, provides an insufficient basis for applying the vulnerable-victim enhancement. For that enhancement to apply, the district court must find that the victim-patient was more vulnerable to the crime than the average patient upon whom the doctor could prey. *Ibid.*; *see also United States v. Grimes*, 173 F.3d 634, 637 (7th Cir. 1999) (concluding that vulnerable victims are those that "have a lower than average ability to protect themselves from the criminal").[8]

We therefore hold that the district court clearly erred when it applied the vulnerable victim enhancement. As a result, the district court miscalculated Stokes's Guidelines range and the resulting sentence was procedurally unreasonable.[9]

---

[8]The government argues that there is a second basis for applying the vulnerable-victim enhancement: Stokes's patients' fear of having or developing skin cancer. It may be true that an individual with a greater than average fear of developing skin cancer could qualify as a vulnerable victim. But the district court made no finding to support that Stokes's patients fit into this category, or that he knew or should have known of this alleged vulnerability. There is thus no basis for concluding that the vulnerable-victim enhancement should apply to Stokes.

[9]We do not mean to suggest that the vulnerable victim enhancement could not possibly apply in this case. On remand, the district court may evaluate the applicability of the vulnerable victim enhancement under the proper interpretation of that provision, which we have set out.

**C**

Because we find that an error in calculating Stokes's Guidelines range rendered his sentence procedurally unreasonable, we do not reach the question of whether the district court gave undue weight to the Sentencing Guidelines.

**IV**

For the reasons stated above, we AFFIRM appellant's conviction but VACATE his sentence and REMAND to the district court for resentencing.