

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2002

# USA v. Zats

Precedential or Non-Precedential: Precedential

Docket No. 00-2757

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Zats" (2002). *2002 Decisions.* Paper 476.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/476

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 5, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2757

UNITED STATES OF AMERICA

v.

STEVEN B. ZATS,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action Nos. 97-cr-00590)
District Judge: Honorable Jan E. DuBois

Submitted Under Third Circuit LAR 34.1(a)
December 6, 2001

Before: ALITO, AMBRO and GREENBERG, Circuit Ju dges

(Opinion filed: August 5, 2002)

MICHAEL D. SHEPARD
Blank, Rome, Comisky &
 McCauley LLP
One Logan Square
Philadelphia, PA 19103

 Counsel for Appellant



MICHAEL L. LEVY
United States Attorney
WALTER S. BATTY JR.
Assistant United States Attorney,
 Senior Litigation Counsel
ROBERT A. ZAUZMER
Assistant United States Attorney,
 Chief of Appeals
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

 Counsel for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge.

Steven Zats used his debt collection practice to defraud
creditors who hired him. After he was caught, he pled guilty
to several federal offenses. In this appeal, Zats contends

that the District Court erred by enhancing his sentence pursuant to S 3A1.1(b) of the United States Sentencing Guidelines ("U.S.S.G."), better known as the vulnerable victim enhancement. We affirm.

## I. Factual and Procedural History

Zats was an attorney who specialized in collecting small debts, usually hundreds of dollars. Many of his clients were doctors whose patients owed money on their medical bills. These patients were frequently poor, facing desperate personal circumstances, and ignorant of their legal rights. Nonetheless, Zats collected debts by harassing debtors and ignoring the requirements of the Fair Debt Collection Practices Act, 15 U.S.C. S 1692 et seq. If a debtor would not pay a debt voluntarily, Zats would file a lawsuit, obtain a judgment (typically by default), and execute on it against the debtor's bank account.1 But when Zats could not locate

_____

1. One former employee stated that he quit in disgust after Zats and his sister celebrated how they saved up a list of debtors until just before Christmas so that they could freeze their bank accounts in time for the holidays.

a bank account, he often engaged in a phone "survey" in which he called the debtor, offered him or her a free gift for completing his survey, and then asked questions until he obtained enough information to identify the account. When Zats succeeded in collecting debts, he routinely failed to forward to his clients the full amount of the funds to which they were entitled.

Two examples illustrate Zats' practices. Edmond Jefferson had a disputed $6,000 debt with the physician treating his terminally ill wife. The physician explicitly instructed Zats not to pursue the money, but Zats nonetheless seized $6,000 from Jefferson's account. Jefferson called Zats to beg for the money. He explained that his wife was dying, his son had recently died, and he had no money to pay for food or funeral expenses. Zats laughed at him, kept the money, and never turned it over to the doctor.

Sylvia Micozzi was two days late on a payment to her dentist for a procedure that she said she never authorized. Zats filed a judgment, used his phone "survey" to trick her into divulging the location of her bank account, and then froze the account. When she called to explain that her husband was sick and that she could not afford the payment, Zats informed her that he "had high hopes that she had life insurance on her husband." Distraught, she agreed to make the payment.

Zats' failure to turn over his clients' funds eventually resulted in his arrest. He pled guilty to conspiracy to commit mail fraud, wire fraud, and a tax offense, all in

violation of 18 U.S.C. S 371, as well as to attempted tax evasion in violation of 26 U.S.C. S 7201. At sentencing, the District Court heard arguments on whether to add a vulnerable victim enhancement to Zats' sentence. The Government argued that many of the debtors from whom Zats collected were vulnerable, even though the most direct victims of his crime, the creditors, may not have been. The Court agreed and enhanced Zats' sentence two levels pursuant to U.S.S.G. S 3A1.1(b). He appealed. 2

_____

2. We have appellate jurisdiction under 18 U.S.C.S 3742(a) and 28 U.S.C. S 1291.

II. Standard of Review

We exercise plenary review over the District Court's legal interpretation of the Sentencing Guidelines. United States v. Monostra, 125 F.3d 183, 188 (3d Cir. 1997). However, "factual findings concerning the vulnerable victim adjustment are reversible only for clear error." United States v. Iannone, 184 F.3d 214, 220 (3d Cir. 1999).

We have generally assumed that our standard of review for the application of the Guidelines to facts is plenary, see, e.g., United States v. Jarvis, 258 F.3d 235, 241 (3d Cir. 2001), but the Supreme Court's recent decision in Buford v. United States, 532 U.S. 59 (2001), prompts us to modify this position. According to 18 U.S.C. S 3742, the courts of appeals "shall give due deference to the district court's application of the guidelines to the facts." Buford involved a bank robber who received a career offender enhancement to her sentence under S 4B1.1 of the Guidelines because the District Court decided to treat her five prior convictions as separate crimes rather than consolidate them into a single conviction. Buford, 532 U.S. at 61-62. The Seventh Circuit agreed that the prior convictions were separate under a clear error standard of review, United States v. Buford, 201 F.3d 937, 940-42 (7th Cir. 2000), and the Supreme Court affirmed. Buford, 532 U.S. at 60. Based on its reading of S 3742, the Supreme Court held that appellate courts should review "deferentially" trial court determinations about whether previous criminal cases were consolidated under the Guidelines. Buford, 532 U.S. at 64. Buford did not define deferential review, but we conclude, as the Seventh Circuit did, see 201 F.3d at 941, that it means clear error review in this context. Although guided by legal principles, sentencing judges conduct a factual inquiry when determining whether a victim is particularly vulnerable. The alternative understanding of deferential would be abuse of discretion, but that standard does not fit as well here. The question is not whether the District Court abused its discretion in choosing among different courses of action. Instead, it is whether the Court perceived the facts correctly.

The reasons for applying deferential review in Buford

apply here as well. As in Buford, the question of whether a

victim is particularly vulnerable is one in which"factual
nuance may closely guide the legal decision, with legal
results depending heavily upon an understanding of the
significance of case-specific details." 532 U.S. at 65. Thus,
while we exercise plenary review over the legal question of
who can be a victim for purposes of the vulnerable victim
enhancement, we review deferentially (i.e., for clear error)
the District Court's determination that Zats' victims were
particularly vulnerable.

## III. Discussion

We affirm Zats' sentence because he satisfies the
standard in U.S.S.G. S 3A1.1(b)(1) and the accompanying
application note.3 Section 3A1.1(b)(1) states: "If the
defendant knew or should have known that a victim of the
offense was a vulnerable victim, increase by 2 levels."

We employ a three-part test to determine whether a
vulnerable victim enhancement is appropriate:

> The enhancement may be applied where: (1) the victim
> was particularly susceptible or vulnerable to the
> criminal conduct; (2) the defendant knew or should

_____

3. The application note for U.S.S.G. S 3A1.1 provides in relevant part:

> For purposes of subsection (b), "vulnerable victim" means a
> person (A) who is a victim of the offense of conviction and any
> conduct for which the defendant is accountable underS1B1.3
> (Relevant Conduct); and (B) who is unusually vulnerable due to age,
> physical or mental condition, or who is otherwise particularly
> susceptible to the criminal conduct.

> Subsection (b) applies to offenses involving an unusually
> vulnerable victim in which the defendant knows or should have
> known of the victim's unusual vulnerability. The adjustment would
> apply, for example, in a fraud case in which the defendant marketed
> an ineffective cancer cure or in a robbery in which the defendant
> selected a handicapped victim. But it would not apply in a case in
> which the defendant sold fraudulent securities by mail to the
> general public and one of the victims happened to be senile.
> Similarly, for example, a bank teller is not an unusually vulnerable
> victim solely by virtue of the teller's position in a bank.

U.S.S.G. S 3A1.1, cmt. n.2.

> have known of this susceptibility or vulnerability; and
> (3) this vulnerability or susceptibility facilitated the
> defendant's crime in some manner; that is, there was
> 'a nexus between the victim's vulnerability and the

crime's ultimate success.'

Iannone, 184 F.3d at 220 (quoting Monostra, 125 F.3d at 190).

Zats offers several reasons why the enhancement should not apply to him. None is persuasive. At the outset, we note that Zats does not challenge the Government's facts; indeed, he stipulated to them. He challenges only the District Court's interpretation and application of the vulnerable victim enhancement.

A. Victim status

Zats' first argument is that the "victims" to which the vulnerable victim enhancement refers must be the victims of the offense of conviction. He contends that because he pled guilty only to defrauding his clients, who were not vulnerable, the enhancement cannot apply.

The cases on this issue and the language of the Sentencing Guidelines refute Zats' argument. The application note for U.S.S.G. S 3A1.1(b) states in relevant part:

> For purposes of subsection (b), "vulnerable victim" means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under S1B1.3 (Relevant Conduct) .. . .

U.S.S.G. S 3A1.1, cmt. n.2 (emphasis added). The application note thus refers not only to conduct involved in the offense of conviction, but also to any relevant conduct under S 1B1.3. Section 1B1.3(a) includes the following as relevant conduct:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> . . . .
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2)

6

> above, and all harm that was the object of such acts and omissions . . . .

U.S.S.G. S 1B1.3(a). In United States v. Cruz, 106 F.3d 1134 (3d Cir. 1997), we found that "neither S 3A1.1(b) nor the application note explicitly requires that we read'victim' narrowly and that, under S 1B1.3, we may look at all the conduct underlying the offense of conviction." Id. at 1137 (emphasis added). We then applied the enhancement where the defendant sexually assaulted a twelve-year-old victim in the process of stealing a car and later pled guilty only to carjacking. Id. Likewise, in Monostra , we said that "the

drafters of the Sentencing Guidelines did not intend to limit the application of S 3A1.1(b) to situations in which the vulnerable person was the victim of the offense of conviction. Rather, trial courts may look to all the conduct underlying an offense, using S 1B1.3 as a guide." 125 F.3d at 189. We held that the enhancement could apply where the defendant bilked a small business in the course of defrauding a bank. Id. In addition, other courts of appeals have applied the enhancement where doctors exploited patients in order to submit fraudulent medical insurance claims. See, e.g., United States v. Bachynsky, 949 F.2d 722, 735-36 (5th Cir. 1991); United States v. Echevarria, 33 F.3d 175, 180-81 (2d Cir. 1994).

One argument that neither Zats nor any of our cases raises, but which we address nonetheless, is that the application note for U.S.S.G. S 3A1.1(b) says that a victim must be a "victim of the offense of conviction and any conduct for which the defendant is accountable under S1B1.3." U.S.S.G. S 3A1.1, cmt. n.2 (emphasis added). The use of "and" here is troubling because it suggests that a "vulnerable victim" must be harmed by both the offense of conviction and by relevant conduct outside that offense. Under that reasoning, Cruz was wrongly decided because the vulnerable victim (a twelve-year old girl raped during a carjacking) was not also the victim of the offense of conviction (the stolen car's driver), Cruz, 106 F.3d at 1137, and the debtors in this case--who are not victims of any offense of conviction--are not victims for purposes of the enhancement.

7

However, we will not adopt this reading. The Sentencing Commission could not have intended to define "victim" for sentencing purposes more narrowly than for the offense of conviction itself, and we will not read a text to produce absurd results plainly inconsistent with the drafters' intentions. See Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 452-55 (1989). At the same time, it cannot be that the Commission meant to say "or" instead of "and." That would render the "offense of conviction" clause redundant because "relevant conduct" already includes the offense of conviction. We conclude that the drafters obviously intended to define "victim" to mean anyone hurt by conduct for which the defendant is accountable under S1B1.3. That reading is consistent with our precedents and with common sense. Therefore, victim status is not limited to those hurt by the offense of conviction, but also includes those hurt by relevant conduct outside that offense.

In his brief, Zats does not address the holdings in Cruz and Monostra on this issue even though the District Court explicitly relied on them. In any event, Zats could not have refuted our rule that, for the vulnerable victim enhancement to apply, the victim injured by the defendant's relevant conduct need not also be injured by the offense of conviction. See Cruz, 106 F.3d at 1137; Monostra, 125 F.3d at 189. Zats intimidated the debtors

and violated their rights under the Fair Debt Collection Practices Act. Applying SS 1B1.3 and 3A1.1(b), we find this sufficient to deem the debtors victims of Zats' conduct for purposes of the vulnerable victim enhancement.

B. The Requirements for a Vulnerable Victim
        Enhancement

1. Particular vulnerability

The first requirement under Iannone for imposing a vulnerable victim enhancement is that the victim be "particularly susceptible or vulnerable to the criminal conduct." 184 F.3d at 220. Zats' victims, many of whom were poor, sick, facing personal emergencies, or all three, qualify. Victims can be vulnerable for the reasons listed in the application note--age, physical or mental condition--or simply because one is "otherwise particularly susceptible to

the criminal conduct." U.S.S.G. S 3A1.1, cmt. n.2. Financial vulnerability is one way a victim can be "otherwise particularly susceptible." See United States v. Arguedas, 86 F.3d 1054, 1058 (11th Cir. 1996); United States v. Borst, 62 F.3d 43, 46-47 (2d Cir. 1995).

The Second Circuit has stated that "[t]he correct test [for vulnerability] calls for an examination of the individual victims' ability to avoid the crime rather than their vulnerability relative to other potential victims of the same crime." United States v. McCall, 174 F.3d 47, 51 (2d Cir. 1998). We agree with this standard. The issue in our case is whether an individual debtor's circumstances made Zats' improper debt collection methods particularly likely to succeed against him or her, not merely whether the debtor is more vulnerable than most debtors. There are some crimes to which almost no victims are particularly vulnerable. For example, few bank tellers are particularly vulnerable to bank robbery. There are other crimes, however, such as fraudulently marketing cancer remedies to cancer patients, to which many (if not most) victims may be particularly vulnerable. See id.

Our objective is to provide extra deterrence for defendants who are especially likely to succeed in their criminal activities because of the vulnerability of their prey. An extra dose of punishment removes the criminal's incentive to facilitate his crime by selecting victims against whom he actually will enjoy a high probability of success. At the same time, presumed vulnerabilities among broad classes of victims--such as an assumption that all elderly people are easily fooled--are disfavored as a basis for the enhancement because such presumptions are often incorrect with respect to specific individuals. See, e.g., id. at 50. Focusing the enhancement on group-based assumptions would permit criminals to reduce their sentencing exposure by victimizing individuals who do not belong to traditionally disadvantaged groups. Thus, we look

to the individual vulnerabilities of the actual victims of the crime that occurred.

Many of Zats' victims were particularly vulnerable to his Scrooge-like practices because they could not afford to have their accounts frozen, even temporarily. Many were poor

and lacked access to outside funds or support. Some were severely ill, which is not surprising because Zats specialized in collecting debts for doctors. And, given their responses to Zats, many of the debtors were completely ignorant of their legal rights.

As explained above, we review the District Court's factual determination that these victims were vulnerable only for clear error. The Court did not clearly err here. The record is replete with examples of highly vulnerable victims, and Zats has stipulated that the Government could prove the historical facts underlying those examples.

2. Knowledge

The second requirement is that "the defendant knew or should have known of this susceptibility or vulnerability." Iannone, 184 F.3d at 220. Zats satisfies this requirement. He misleadingly argues that he did not target anyone because they were poor. Assuming that is true, although the evidence in the record shows otherwise, it is irrelevant. The Guidelines do not require that the defendant actually target his victims or otherwise seek them out because of their vulnerability. To the contrary, the Guidelines' commentary was amended in November 1995 to clarify that there is no targeting requirement. See Cruz, 106 F.3d at 1138; United States v. Paneras, 222 F.3d 406, 413 (7th Cir. 2000).4 What matters is not whether Zats wanted to exploit vulnerable victims, but whether he knew or should have known that he was doing so.5

Zats had every reason to know of his victims' vulnerabilities. He knew that the debts he collected were mostly for medical treatment and that the debtors were

---

4. In fact, we have held that, even under the pre-amendment commentary, S 3A1.1 did not contain a targeting requirement. See Cruz, 106 F.3d at 1139.

5. The "knew or should have known requirement" is the reason that the application note says that the enhancement "would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of victims happened to be senile." U.S.S.G. S 3A1.1, cmt. n.2. The missing element in that case is that the defendant had no reason to know such a victim existed; that he did not target a senile victim is irrelevant.

therefore likely to be less resistant. Moreover, he knew that his high-pressure tactics worked best against debtors who were impoverished, facing family or health emergencies, and ignorant of their legal rights. Many of the people he pursued badly needed cash when he seized their accounts, and thus quickly yielded to his pressure.

Furthermore, Zats knew that at least some debtors were particularly vulnerable because they told him so. The Government's brief recounts case after case in which a debtor told Zats that she could not afford to have her account frozen even temporarily because she or one of her family members was seriously ill, handicapped, or facing a personal emergency. Zats invariably replied that he did not care and kept after the debtor until he or she appeared at his office with cash. His behavior leaves no doubt that he knew of his victims' particular vulnerabilities.

Moreover, the language "knew or should have known" means that negligence is a sufficient level of culpability for a S 3A1.1 enhancement. "A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct." Model Penal Code S 2.02(2)(d). Unlike recklessness, which requires conscious disregard of a substantial risk of serious harm, negligence requires no actual awareness of the risk. See United States v. Trinidad-Aquino, 259 F.3d 1140, 1146 (9th Cir. 2001); Model Penal Code S 2.02(2)(c), (d). Zats was at least negligent as to whether his victims were vulnerable. The record leaves no doubt that he should have been aware of a substantial and unjustifiable risk that many debtors paid him because they desperately needed access to their accounts and could not wait for legal help. He obviously knew that most had fallen behind on paying their medical bills, suggesting that they were both poor and sick. Moreover, Zats designed his methods to exploit their vulnerabilities. His extortionary tactics would be less likely to succeed against a debtor who had enough cash to sustain himself temporarily, who could rely on his family or friends, or who had a rudimentary knowledge of his legal rights.

11

Zats' brief suggests that he cannot receive a vulnerable victim enhancement unless he knew in advance about the particular vulnerabilities of the debtor from whom he was trying to collect. There is no such requirement. Nothing in the Guidelines requires that an offender have prior knowledge of his victim's vulnerabilities. The applicable guideline requires only that he "knew or should have known." U.S.S.G. S 3A1.1(b)(1). That knowledge or notice could arise during the course of an ongoing offense such as fraud. Indeed, Zats' own brief cites an Eleventh Circuit case stating that "even if [the defendant] did not initially know of [the victim's] vulnerability, he warrants aS 3A1.1 enhancement because he learned of the vulnerability

during the course of the . . . fraud and thereafter continued to perpetrate the fraud." Arguedas, 86 F.3d at 1058.6

Finally, the Government need not prove that every, or even most, of Zats' victims were vulnerable or that he knew or should have known of the vulnerabilities in every case. The language of the guideline requires only that"a victim of the offense was a vulnerable victim." U.S.S.G.S 3A1.1(b)(1) (emphasis added); see also United States v. Smith, 133 F.3d 737, 749 (10th Cir. 1997) ("A single vulnerable victim is sufficient to support application of the enhancement."). The examples we have mentioned much exceed this low threshold.

## 3. Facilitation

The third requirement is that the debtor's "vulnerability or susceptibility facilitated the defendant's crime in some manner; that is, there was 'a nexus between the victim's vulnerability and the crime's ultimate success.' " Iannone, 184 F.3d at 220 (quoting Monostra, 125 F.3d at 190). Sometimes a victim's vulnerability makes him sympathetic but does not facilitate the crime. See Monostra , 125 F.3d at 191 (finding no indication that victim's visual impairment facilitated defendant's efforts to defraud banks). In this case, however, a clear causal connection exists. The

_____

6. Moreover, Zats' argument that he did not have advance knowledge once again ignores the "should have known" language of S 3A1.1(b)(1). Zats should have known many of the debtors were particularly vulnerable before communicating with them.

12

debtors' particular vulnerabilities made it much more likely that Zats' heavy-handed methods would succeed. It is difficult to conceive that debtors with more financial resources, less urgent personal circumstances, or a better understanding of their rights would have agreed to his demands. In many cases, Zats collected from debtors who owed no debt or less than he claimed. In other cases, he apparently collected funds that were legally exempt from collection. Less vulnerable debtors might have refused to cooperate and in any event would have been better able to protect their rights.

Completing the causal chain, the ability to collect from vulnerable debtors allowed Zats to commit the crimes to which he pled guilty--defrauding the creditors who were his clients. Thus, the vulnerabilities that Zats exploited in the debtors sufficiently facilitated his offenses.

## IV. Conclusion

The debtors in this case are properly considered victims of Zats' conduct, even though they are not direct victims of the particular offenses to which Zats pled guilty. The Government's statements at sentencing demonstrate that

many of the debtors were particularly vulnerable to his methods, and Zats stipulated that the Government can prove its facts. The Court thus did not clearly err in finding that many of the victims were particularly vulnerable. Moreover, Zats' conduct leaves no doubt that he knew or should have known about his victims' particular vulnerabilities to his debt collection methods. Finally, those vulnerabilities sufficiently facilitated Zats' efforts to defraud his clients. For these reasons the judgment of the District Court is affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

13