

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2006

# USA v. Pepsny

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3467

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Pepsny" (2006). *2006 Decisions.* Paper 759.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/759

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-3467

———

UNITED STATES OF AMERICA

v.

DONNA PEPSNY,
                    Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cr-00047-3)
District Judge:  Honorable Jose L. Linares

———

Submitted Under Third Circuit LAR 34.1(a)
July 10, 2006

Before:  SLOVITER, McKEE and RENDELL, Circuit Judges

(Filed: July 11, 2006)

———

OPINION

SLOVITER, Circuit Judge.

Donna Pepsny, whom the jury found guilty of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 371 (Count One), and four counts of Wire Fraud, in violation of 18 U.S.C. § 1343, appeals her sentence of 30 months imprisonment. Pepsny had previously appealed her conviction on all counts and this court vacated her conviction as to all counts except Count One. Because the judge who had tried and originally sentenced Pepsny had retired, a different District Court judge ("District Judge") was appointed for the resentencing. Following a new sentencing hearing, the new judge sentenced Pepsny to thirty months' imprisonment for conspiring to commit wire fraud.

## I.

According to the facts set forth in Pepsny's Presentence Investigation Report ("PSR"), which she has not challenged, Pepsny worked as a real estate agent and sold properties owned by William Kane. Kane was a client of Pepsny's husband, Richard Pepsny, an attorney. Kane purchased dilapidated homes, made minimal repairs to them, and then resold them to unsophisticated, low-income buyers who were lured in by advertisement for cheap homes with little or no money down. These home buyers were represented by Pepsny and her co-conspirator Irene DiFeo.

The PSR states that Pepsny joined the conspiracy from its inception in 1995. Pepsny contends that there is no evidence of that fact. The PSR and testimony at trial suggests otherwise. Kevin June, one of Pepsny's clients (and victims), purchased a home

2

in New Jersey in February 1996. He and Pepsny agreed on a price of $90,000. Pepsny also advised June that he could obtain between $15,000 and $20,000 from the mortgage of the house for necessary repairs. Pepsny advised him that his monthly mortgage payment would be approximately between $1,050 and $1,070. He understood that this amount included taxes. The contract showed a fictitious deposit of $500.

After June signed the contract, Vincent Applegate, a co-conspirator, whited out the purchase price and increased it in order to enable June to get a mortgage. He claims that he did so in Pepsny's presence. Pepsny then directed June to Applegate for assistance in obtaining a mortgage and to Co-Defendant Stanley Yacker, an attorney, for legal representation. Pepsny advised June that to obtain a mortgage he needed to have a higher income. Pepsny suggested he provide both rent receipts (notwithstanding the fact that June paid no rent because he lived with his parents) and gift letters from friends certifying that they had given June money. Pepsny assisted June in writing fraudulent gift letters.

June closed on the property in February. He brought no money to the closing. Pepsny asked June to write a check for an amount greater than that which he had in his checking account. June stated that he lacked the funds, but Pepsny assured him that she would hold the check and "after the closing we'll just go from there." App. at 222. June was also told to sign a balloon note for $110,250, as well as a second mortgage for $22,000. Neither Pepsny nor Yacker explained the balloon note or the second mortgage to June.

3

June did not receive a copy of the settlement statement at closing, which reflected a purchase price of $147,000. June still believed he was paying $110,250, $90,000 for the house and "another 15 or 20,000 for repairs." App. at 226. The settlement statement also included a fictitious deposit of $14,700.

Before closing, Pepsny was very friendly and returned June's calls. After closing, she became difficult to reach. June experienced problems obtaining a certificate of occupancy, necessary in order to begin repairs, and sought assistance from Pepsny. Because he could not afford the mortgage payments, June lost the house in foreclosure.

A joint investigation by the Asbury Park Press, Monmouth County Prosecutor's Office, and FBI of the conspiracy in which Pepsny and others were involved began in 1997. Defendants Irene DiFeo and Donna Pepsny were charged, tried, and convicted of, inter alia, conspiracy to commit wire fraud.[1] As noted above, Pepsny was sentenced to thirty months' imprisonment. In addition, the court ordered that she pay restitution in the amount of $387,697.

## II.

On appeal, Pepsny contends that the District Judge erred when it sentenced Pepsny based on contested facts. The District Judge, who had not been present at trial, relied on trial transcripts of the testimony of government witnesses in finding that Pepsny had been

---

[1] Defendants Stanley Yacker and Vincent Applegate pled guilty to one count of conspiracy to commit wire fraud.

involved with the conspiracy from its inception. Pepsny contends that the District Judge should have held an evidentiary hearing before making this finding. Pepsny also contends that an enhancement applied by the District Judge to Pepsny's sentence for abusing a position of trust was unwarranted.[2] Lastly, she contends that her sentence was unreasonable because the sentence was greater than necessary. We address each of these arguments in turn.

Analysis

According to Pepsny, the District Judge "erred in making contested factual determinations without conducting an evidentiary hearing or reviewing the entire record." Appellant's Br. at 24. She contends that because no evidentiary hearing was held, her sentence should not have been enhanced pursuant to § 1B1.3 of the Sentencing Guidelines. This provision of the Guidelines provides that a defendant's sentence may be enhanced based on all of the acts committed in the conspiracy after the defendant joined the conspiracy.[3] Application of this enhancement requires a district court to determine, by

---

[2] She also argues that an upward adjustment applied by the District Court for "more than minimal planning" was erroneous, but concedes that if this courts finds that the District Court correctly found that she was involved with the conspiracy from its inception, this enhancement is correct. App. at 55 (citing U.S.S.G. § 2F1.1).

[3] Application Note 2 to U.S.S.G. § 1B1.3 provides:

A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant's joining the conspiracy, even if the defendant knows of that conduct

5

a preponderance of the evidence, when the defendant became a member of the conspiracy. The District Court found Pepsny was a member of the conspiracy at the time of its first transaction, which involved June. As noted supra, this finding was based on a reading of the transcript of testimony by Government witnesses.

Insofar as Pepsny raises a question of legal procedure – i.e., whether the District Court was required to hold an evidentiary hearing to determine when she joined the conspiracy – our standard of review is plenary. Insofar as Pepsny raises a question of fact-finding – i.e., whether the record in fact supported a finding that she was involved in conspiracy from its inception – the parties dispute our standard of review. The Government contends that we review findings of fact for clear error. Pepsny contends that because factual determinations were made solely on the basis of the record before us, we need not apply such a deferential standard. She neglects, however, to state precisely which standard we should apply.

This court requested that the parties submit additional briefing on the effect of this

---

(e.g., in the case of a defendant who joins an ongoing drug distribution conspiracy knowing that it had been selling two kilograms of cocaine per week, the cocaine sold prior to the defendant joining the conspiracy is not included as relevant conduct in determining the defendant's offense level). The Commission does not foreclose the possibility that there may be some unusual set of circumstances in which the exclusion of such conduct may not adequately reflect the defendant's culpability; in such a case, an upward departure may be warranted.

6

court's decision in <u>United States v. Mitchell</u>, 187 F.3d 331 (3d Cir. 1999), on the issues in this case. <u>Mitchell</u> came to this court on remand from the Supreme Court, which had vacated our affirmance of Mitchell's sentence. The Supreme Court held that the District Court had erroneously drawn an adverse inference from Mitchell's refusal to testify at sentencing. <u>United States v. Mitchell</u>, 526 U.S. 314 (1999). In determining whether to vacate the entire sentence or only the part of sentence based on the adverse inference, this court stated:

> We find it difficult to accept the government's suggestion that a full sentencing rehearing can be avoided under the circumstances in this case because the District Court judge who presided at trial and conducted the sentencing hearing has since retired from the bench. As we noted in our opinion on appeal, "the district court found credible the four witnesses who testified that Mitchell sold cocaine on a regular basis." Because on remand this case must be assigned to a district judge who had not had the opportunity to observe the witnesses either at trial or at the sentencing hearing, we believe that it is better procedure to direct a full sentencing hearing.

<u>Mitchell</u>, 187 F.3d at 332-33 (citation omitted).

Although we held that an evidentiary hearing in a situation such as Mitchell's is generally the "better procedure," <u>id.</u>, we did not hold that such a hearing is always required. We have stated in other opinions that sentencing judges who have not presided at trial may make findings of fact and credibility based on the record alone. In <u>Virgin Islands v. Mills,</u> 935 F.2d 591 (3d Cir. 1991), the district court granted a motion for a new trial because the sentencing judge, who was different from the trial judge, felt

7

insufficiently familiar with the record to impose lengthy sentences. We stated, "A judge who did not preside at trial has several less drastic means of acquiring the knowledge needed to make discretionary sentencing decisions. The judge will, or course, receive a presentence report. The judge may read and study the trial transcript. The judge may request the parties to submit sentencing memoranda. And if the judge believes that live testimony is needed in order to make credibility determinations . . . , the judge may conduct a sentencing hearing." Id. at 598 (emphasis added). Here, the sentencing judge noted that he had read every document in the record. He also asked defendant whether she sought an evidentiary hearing, to which defendant responded in the negative. Given the complete record of the testimony and defendant's failure to request an evidentiary hearing, we conclude that a credibility determination could be made based on the record in this case. We note that there may be many other situations in which a rehearing like the one recommended in Mitchell may be required, but in this case we affirm because we are satisfied by the thoroughness of the District Court's review of the record.

We also conclude that the record supports a finding, by a preponderance of the evidence, that Pepsny was involved with the crime from its inception. The transcripts of the testimony of Applegate and June, notwithstanding Appellant's cross-examination, support such a finding. Our conclusion is the same whether we review the District Court's findings of fact under the deferential clear error standard or review the issue de novo.

8

We also reject Pepsny's contention that the District Court erred when it enhanced her sentence based on the vulnerability of the victim. "Financial vulnerability is one way a victim can be 'otherwise particularly susceptible.'" United States v. Zats, 298 F.3d 182, 188 (3d Cir. 2002). June was clearly financially vulnerable. He was ensnared in Pepsny's scheme because of his desire to own a home that he could afford on his low income. In addition, because the District Court's finding that June was a vulnerable victim withstands both de novo and clear error review, we need not engage in a discussion regarding the applicability of a less stringent standard of review to the decisions of the District Court which reviewed the records in Appellant's case.

Finally, we reject Pepsny's contention that her sentence was unreasonable. The District Court clearly considered the relevant sentencing factors, as required by United States v. Cooper, 437 F.3d 324 (3d Cir. 2006).

We will affirm the judgment of conviction and sentence.