NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4679
_____

UNITED STATES OF AMERICA

v.

KAREN HAWKINS,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-08-cr-00326-001)
District Judge:  The Honorable Donetta W. Ambrose
_____

Submitted Under Third Circuit LAR 34.1(a)
October 21, 2010

BEFORE:  HARDIMAN, GREENAWAY, JR., and NYGAARD, Circuit Judges.

(Filed:  December 15, 2010)
_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

A jury in the Western District of Pennsylvania found Karen Hawkins guilty of one

count of embezzlement of funds by a bank employee, pursuant to 18 U.S.C. § 656.  She

was sentenced to twelve months and one day imprisonment, followed by a five-year term

of supervised release. Hawkins was also ordered to make restitution for the total amount of loss. She now appeals her conviction and sentence. We will affirm both.

## I.

The parties are familiar with the facts and proceedings before the District Court, so we will only briefly revisit them here. Over a course of four months, Hawkins, a teller at Dollar Bank's Greengate branch, stole money from account holders in one thousand dollar increments. In September of 2006, Hawkins' cash drawer was short by one thousand dollars. Suspicions were raised when Hawkins reported the money found the next day. Further suspicions were raised when an account holder at Dollar Bank reported unusual activity in her account--an unauthorized withdrawal of one thousand dollars. Dollar Bank initiated an internal investigation that ultimately uncovered thirteen accounts at the Greengate branch that had unauthorized withdrawals ranging from one to three thousand dollars. The withdrawals totaled $22,000.00. All of the questionable transactions were conducted under Hawkins' unique teller identification number and password. Hawkins' defense at trial was that someone else had embezzled the funds and that she was experiencing computer trouble at her workstation. The jury rejected her defense, returning a verdict of guilty.

## II.

On appeal, Hawkins brings three challenges to her conviction and sentence. First she argues that the District Court abused its discretion by permitting testimony of certain witnesses, thereby violating her Sixth Amendment right to confront witnesses against her. Her second and third arguments focus on her sentence: she challenges the District

Court's calculation of loss and its imposition of a two-point enhancement to her base offense level premised on the vulnerability of her victims. We exercise de novo review over Hawkins' Sixth Amendment Confrontation Clause challenge and we review the District Court's factual findings relative thereto for clear error. *See United States v. Hendricks*, 395 F.3d 174, 176-77 (3d Cir. 2005). We review for abuse of discretion the admissibility of evidence. *See United States v. Starnes*, 583 F.3d 196, 213-14 (3d Cir. 2009). Even if we find an abuse of discretion, the District Court's ruling will stand if the error was harmless. *See United States v. Casoni*, 950 F.2d 893, 902 (3d Cir. 1991). The standard of review of the District Court's sentencing is abuse of discretion. *Gall v. United States*, 552 U.S. 38 (2007).

A.     Confrontation Clause

Three Dollar Bank customers were not available to testify at trial: Charles Linn, a 42-year old autistic man, Anne Fondrk, an 84-year old woman who was injured the day before she was scheduled to testify, and Eleanor Bailey, who had died before the trial. Over defense objection, the District Court permitted the Government to introduce testimony from representatives of the three unavailable account holders. Hawkins argues that this violated her rights under the Confrontation Clause, specifically maintaining that the testimony was premised on hearsay statements from the account holders. Because she did not have the opportunity to challenge these alleged hearsay statements from the customers themselves, Hawkins submits that testimony of the representatives violated her right to confrontation. We conclude, however, that the testimony was properly introduced for a non-hearsay purpose. This conclusion is fatal to Hawkins' argument, as

3

"the Confrontation Clause . . . 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *See United States v. Hendricks*, 395 F.3d 173, 183 (3d Cir. 2005) (quoting *Crawford v. Washington*, 541 U.S. 36, 59 n.9).

Here, the District Court did not admit testimonial statements from the account owners themselves. For example, Nina Dmetruk, who testified on behalf of Mr. Linn, did not relate any statements that Linn had made regarding the withdrawal of the $1,000.00. Instead, she related her personal knowledge of Linn's banking habits in order to establish that she had never known Linn to make such a large withdrawal. No testimonial statements--hearsay or otherwise--were offered from Linn through Dmetruk's testimony.

Anne Fondrk's son Richard testified to his mother and father's banking habits.[1] Fondrk's testimony contains no statements made by either of his parents. Our review of the transcript reveals Fondrk's testimony not to be based on a review of his mother's affidavit or any conversations he had with his parents regarding the theft, but was based, instead, on Fondrk's personal knowledge of his parents banking practices and their bank accounts. Indeed, at one point during his testimony, the District Court specifically admonished Fondrk not to testify about what his parents had told him regarding the withdrawal in question. Simply put, no hearsay statements of Ann Fondrk or her deceased husband were offered at trial.

---

[1] Ann Fondrk had been planning to testify, but suffered a broken ankle before trial. Richard Fondrk's father had passed away after the theft, but before the trial.

4

Finally, two daughters of Eleanor Bailey offered testimony. Her account was also embezzled and her two daughters were co-signatories of her Dollar Bank savings account. Like the other representatives of the unavailable account holders, Bailey's daughters did not offer any statements from their mother, testifying instead solely to their own knowledge of their mother's use of her Dollar Bank account. No hearsay attributable to Bailey was offered or admitted.

B.    Calculation of Loss

In attacking her sentence, Hawkins first argues that the District Court relied on hearsay statements to calculate the amount of loss at her sentencing. We reject Hawkins' argument for two reasons. First, we have already determined that the District Court did not admit any hearsay in her trial. The District Court relied instead on live testimony from account holders, testimony from bank personnel and business records, which are exempt from the hearsay exclusion under FED. R. EVID. 803(6). Second, as Hawkins concedes, our decision in *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007) precludes her argument that hearsay statements may not be considered at sentencing.

We likewise reject Hawkins' argument that the Due Process Clause was violated by the District Court's consideration of the purported hearsay statements of the account holder's representatives. We reject this argument because we find no admission of hearsay statements on this record. In calculating the amount of loss, the District Court relied on trial testimony that was not hearsay and took great care to caution witnesses about hearsay statements, instructing them that they could not relate any statements made

5

by the aggrieved account holders and must, instead, limit their testimony to their own knowledge.

C.      Vulnerable Victim Enhancement

Lastly, Hawkins argues that the District Court erred when it imposed a two-point enhancement under U.S.S.G. § 3A1.1(b)(1) because some of the victims were elderly. The District Court also applied the vulnerable victim enhancement because one of the victims was autistic.

Pursuant to U.S.S.G. § 3A1.1(b)(1), if a defendant "knew or should have known that a victim" of the offense was a vulnerable victim, the base offense level is to be increased by 2. Pursuant to Application Note 2, the term "vulnerable victim" means a person who is the victim of any offense of conviction under relevant conduct and unusually vulnerable due to age, physical or mental condition, or particularly susceptible to the criminal conduct. In determining whether the "vulnerable victim" enhancement is applicable, we have instructed that a district court must first make three findings: whether the victim of the relevant offense was "particularly susceptible or vulnerable" to the defendant's criminal conduct, whether "the defendant knew or should have known of this susceptibility or vulnerability," and whether "this vulnerability or susceptibility facilitated the defendant's crime in some manner." *United States v. Iannone*, 184 F.3d 214, 220 (3d Cir. 1999). We review a district court's determination that a particular victim was vulnerable for clear error. *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2002). Hawkins argues that the District Court erred because there was no evidence that the victims here were particularly vulnerable. She also argues that there was no evidence

6

she knew the victims' vulnerabilities or that there was any nexus between the condition of the victim account holders and her crime. We disagree and find that the District Court properly applied the sentencing enhancement.

The District Court applied the vulnerable victim enhancement because of the victims ages and, in one instance, a victim's autism. This determination is not clearly erroneous. First of all, in order to qualify for a vulnerable victim enhancement, a defendant need only impact one vulnerable victim. Therefore, the District Court could properly base the enhancement on victim Linn, who was autistic. Linn's autism prevented him from managing his own financial affairs and Hawkins was aware of this because she attended to Linn's banking needs when he came to the bank. The District Court's conclusion that Linn was a vulnerable victim has ample support in the record. Linn resided in an assisted living facility and did not manage his own bank accounts-his statements were sent to a financial advisor who had power of attorney. Linn did not have a driver's license and is not employed. He rides his bicycle to the bank to make withdrawals from this account.

Moreover, the record supports the District Court's application of the enhancement because of the victims' ages. Practically all of the account holders were elderly, with some having died before the trial commenced. However, the District Court did not rely on this generalization alone. The District Court also noted that in addition to being elderly, these victims were "unlikely to be vigilant about their account balances." Indeed, with the exception of one, none of the victims knew their Dollar Bank accounts had been compromised until notified by the bank. We have previously held that victims can be

7

particularly vulnerable if they are financially insecure and susceptible to the particular kind of criminal conduct at issue. *See, e.g., Zats*, 298 F.3d at 185.

Inasmuch as there need only be one vulnerable victim for the two-level enhancement to apply, the District Court did not err. *See* U.S.S.G. § 3A1.1(b)(1). The District Court did not err, however, in finding several of the victims in this case to be vulnerable.

IV.

For the foregoing reasons, we will affirm the District Court's judgment of conviction and sentence.