NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3775
_____

UNITED STATES OF AMERICA

v.

JEAN BAPTISTE ALVAREZ,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(2-15-cr-00377-001)
District Judge:  Honorable Michael M. Baylson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 27, 2017

Before:  GREENAWAY, Jr., COWEN and FISHER, *Circuit Judges*.

(Filed: November 13, 2017)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

_____

   [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Appellant Jean Baptiste Alvarez seeks review of a sentencing determination, challenging the District Court's application of a four-level "vulnerable victim" sentencing enhancement pursuant to USSG § 3A1.1(b)(1)–(2). We will affirm.

## I.

Alvarez worked as a mental health technician at the Kirkbride Center, a behavioral health hospital in Philadelphia, Pennsylvania, specializing in opioid addiction. Between 2012 and 2015, Alvarez had access to "daily census sheets" containing patients' personal information, including their Social Security numbers, names, and dates of birth. As established at trial, Alvarez sold these daily census sheets to co-conspirators for $1,000 per sheet. The co-conspirators then used the information to file more than 150 false tax returns with the Internal Revenue Service, claiming an average refund of nearly $1,500. After an investigation, Alvarez was indicted for conspiracy to defraud the United States with respect to false claims, misuse of a Social Security number, aggravated identity theft, and aiding or assisting in the preparation of false federal income tax returns.

At trial, four of the Kirkbride identify theft victims testified. These patients suffered from, *inter alia*, drug addiction and mental illness, which was typical of Kirkbride patients. None of the victims held regular jobs, or filed tax returns, during the years of the scheme. The government also offered recorded statements made by Alvarez to Peterson Rene, one of Alvarez's co-conspirators who had agreed to cooperate with the government. For example, in one recording, Rene asked Alvarez whether the information

2

on the daily census sheets had been previously used in other tax returns. Alvarez

responded: "Those are people that are on welfare, man. Those people don't work. Those

are people that are collecting from the Government, man. Those people are not working,

man."[1] The jury ultimately found Alvarez guilty of five counts set forth in the indictment.

Prior to sentencing, the probation officer calculated a total offense level of 24 in

Alvarez's presentence report, which included a four-level enhancement under USSG §

3A1.1(b)(1) and (2).  Section 3A1.1(b)(1) provides for a two-level enhancement if the

victim of an offense was a "vulnerable victim," and § 3A1.1(b)(2) provides for another

two-level enhancement if the "offense involved a large number of vulnerable victims."

The defense objected to the PSR regarding the applicability of the four-level

enhancement. The objections, however, centered on whether the victims were

"vulnerable victims" under § 3A1.1(b)(1), and not whether "a large number of vulnerable

victims" was involved under § 3A1.1(b)(2). For example, Alvarez stated that he "did not

target these patients because of their addiction-related vulnerability or mental health

issues," and that "their conditions had no bearing on the criminal activity."[2]

During the sentencing hearing, Alvarez again objected to the four-level

enhancement, again focusing on the applicability of § 3A1.1(b)(1). He argued, for

example, that while individuals with vulnerabilities were the victims, they were not

targeted for that reason. Rather, Alvarez suggested he took their information because that

---

[1] J.A. 173.

[2] J.A. 453–54.

3

was merely what he "had access to."[3] The District Court denied Alvarez's objection, stating that "there was evidence at trial . . . that the defendant had reason to know these are people who are not highly educated, they don't file tax returns[, and they] didn't know what was going on."[4] The District Court further explained its reasons for denying the objection, stating that "testimony at trial clearly showed some conversations that Mr. Alvarez had where he was trading on [the victims'] ignorance . . . ."[5] The District Court determined an offense level of 22, and imposed a below-guideline sentence of 60 months' imprisonment, followed by three years' supervised release.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We exercise plenary review over the District Court's legal interpretation of the Sentencing Guidelines.[6] However, "factual findings concerning the vulnerable victim adjustment are reversible

---

[3] J.A. 553–54.
[4] J.A. 555–56.
[5] J.A. 556.
[6] *United States v. Monostra*, 125 F.3d 183, 188 (3d Cir. 1997) (citing *United States v. Hillstrom*, 988 F.2d 448, 450 (3d Cir. 1993)).

only for clear error."[7] Furthermore, "where an objection is not preserved at sentencing, we review that challenge for plain error."[8]

III.

Alvarez asserts that the District Court erred in: (A) applying a two-level enhancement pursuant to § 3A1.1(b)(1) for exploiting "vulnerable victim[s]," and (B) applying another two-level enhancement pursuant to § 3A1.1(b)(2) because "a large number of vulnerable victims" were involved. We disagree.

A.

Section 3A1.1(b)(1) provides that an offense level should be increased by two points "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." In *United States v. Iannone*, this Court explained that the "vulnerable victim enhancement" applies where:

> (1) [T]he victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's crime in some manner; that is, there was a nexus between the victim's vulnerability and the crime's ultimate success.[9]

---

[7] *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2002) (quoting *United States v. Iannone*, 184 F.3d 214, 220 (3d Cir. 1999)).

[8] *United States v. Fountain*, 792 F.3d 310, 318 (3d Cir. 2015) (citing *United States v. Couch*, 291 F.3d 251, 252–53 (3d Cir. 2002)); *see also United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc).

[9] *Iannone*, 184 F.3d at 220 (citing *Monostra*, 125 F.3d at 190) (internal quotations omitted).

5

Alvarez conceded during sentencing that the first two requirements were met. The issue before us is whether the third factor is satisfied—whether "there was a nexus between the victim's vulnerability and the crime's ultimate success."[10]

Alvarez argues that there is no such "nexus." Rather, he suggests that the Kirkbride patients' vulnerabilities, such as mental illness and drug addition, were only relevant insofar as they related to whether they had filed their taxes. In other words, he argues the Kirkbride patients were not selected for their vulnerabilities, and their vulnerabilities did not facilitate the crime's success. Alvarez's argument is without merit. Testimony and evidence established that the Kirkbride patients suffered from, *inter alia*, mental illness and drug addiction. They were unlikely to be employed or file tax returns, making it unlikely that the IRS would detect a duplicate return. And due to their vulnerabilities, these patients were unlikely to discover and report the fraud on their own. Alvarez admitted as much in recorded statements in which he told Rene that "[t]hose are people that are on welfare," "[t]hose are people that are collecting from the Government," and "[t]hose people are not working."[11] These factors increased the chances of "the crime's ultimate success."[12]

---

[10] *Id.*
[11] J.A. 173.
[12] *Id.*

This Court has acknowledged that "[s]ometimes a victim's vulnerability makes him sympathetic but does not facilitate the crime."[13] Here, however, the Kirkbride patients' vulnerabilities helped facilitate the crime.[14] Accordingly, the District Court did not err, let alone clearly err, in adding a two-level enhancement pursuant to § 3A1.1(b)(1).

B.

Section 3A1.1(b)(2) provides that the offense level is increased by two additional points if "the offense involved a large number of vulnerable victims." Alvarez argues that the District Court erred by failing to make specific findings regarding the number of alleged vulnerable victims. The government contends that Alvarez failed to properly preserve this argument, limiting this Court to plain error review of this issue. Under this standard, the government suggests the District Court did not err. We agree with the government.

Although Alvarez objected to the four-level enhancement on several occasions, his objections always centered on whether § 3A1.1(b)(1) applied, and not whether § 3A1.1(b)(2) applied. In other words, he argued that there could be no "large number of vulnerable victims" if the victims were not "vulnerable victims" to begin with. Now, on appeal, Alvarez makes a new argument. He suggests the District Court failed to make a

---

[13] *Zats*, 298 F.3d at 190.
[14] *See id.* (finding a "clear causal connection" where defendant exploited vulnerabilities in his clients that made it "much more likely that [defendant's] . . . methods would succeed").

specific finding regarding the number of victims. It is perhaps no surprise that Alvarez did not make this argument at trial; the uncontradicted evidence established that 164 patients had their identities stolen and used in fraudulent tax returns. Because Alvarez never preserved this argument regarding the applicability of § 3A1.1(b)(2), we review for plain error.

Under this standard, Alvarez "must show that the error was plain, that it affected substantial rights, and, if not rectified, that it would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'"[15] Alvarez, however, does not make any such showing. The victims were unquestionably "vulnerable," and given that Alvarez stole the identities of over 150 patients, there is no question that a "large number" of victims were involved. Accordingly, we find the District Court did not commit plain error in imposing a two-step enhancement under § 3A1.1(b)(2).

IV.

For the reasons set forth above, we will affirm the District Court.

---

[15] *United States v. Fumo*, 655 F.3d 288, 311 (3d Cir. 2011) (quoting *United States v. Ward*, 626 F.3d 179, 183 (3d Cir. 2010)).