**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2248
_____

UNITED STATES OF AMERICA

v.

TERRELL HAMPTON,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-15-cr-00302-002
District Judge:  The Honorable Gerald J. Pappert

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 3, 2019

Before: SMITH, *Chief Judge*, JORDAN, and MATEY, *Circuit Judges*

(Filed: June 18, 2019)
_____

OPINION[*]
_____

SMITH, *Chief Judge*.

    A jury convicted Terrell Hampton of eighteen counts of conspiracy, wire fraud, and

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

aggravated identity theft for his role in a conspiracy to steal and then sell houses in Philadelphia, Pennsylvania. The District Court sentenced Hampton to a total of 119 months of incarceration. While calculating Hampton's sentence, the Court applied, *inter alia*, a two-level vulnerable victim enhancement under § 3A1.1(b) of the United States Sentencing Guidelines. On appeal, Hampton challenges the application of the vulnerable victim enhancement. We discern no clear error and will thus affirm.

## I.

From May 2007 to October 2014, Hampton participated in a conspiracy—led by his father—to steal, encumber, and sell real property in Philadelphia. Along with his father, Kenneth Hampton; his uncle, Ellis Hampton; and his father's fiancée, Roxanne Mason, Hampton located seemingly vacant property and filed fraudulent deeds purportedly signed by the property owners to obtain apparent title to the property. The conspirators avoided real estate transfer taxes by claiming the houses had been transferred to them by relatives. The conspirators turned a profit by seeking mortgages, obtaining government assistance, soliciting private investments, and selling the houses to unsuspecting buyers.

The government charged Hampton in the operative second superseding indictment with twenty counts: one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371; seventeen counts of wire fraud and attempted wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349; and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). After a seven-day trial, a jury acquitted Hampton of two counts of wire fraud and convicted him of the remaining eighteen counts.

2

At sentencing, the District Court calculated Hampton's total offense level of 23 and criminal history category of III for an advisory Guidelines range of 81 to 119 months.[1] As part of its calculation, the Court applied several enhancements including, as relevant here, a two-level enhancement under § 3A1.1(b) because it found that Hampton's victims were vulnerable. The District Court imposed a total prison sentence of 119 months, with 3 years of supervised release to follow.

Hampton timely appealed.[2]

## II.

Hampton raises a single issue on appeal: whether the District Court erred by applying the vulnerable victim enhancement. "We exercise plenary review over the District Court's legal interpretation of the Sentencing Guidelines." *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2002). We review the District Court's factual findings regarding the vulnerable victim enhancement for clear error. *United States v. Iannone*, 184 F.3d 214, 220 (3d Cir. 1999).

The District Court may increase a defendant's offense level by two "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S. Sentencing Guidelines Manual § 3A1.1(b)(1) (U.S. Sentencing Comm'n 2016). The

---

[1] Hampton's Guidelines range was 57 to 71 months, but the District Court increased the range to 81 to 119 months to account for a mandatory 24-month consecutive sentence resulting from Hampton's aggravated identity theft convictions.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

3

vulnerable victim enhancement is appropriate when (1) "the victim was particularly susceptible or vulnerable to the criminal conduct;" (2) the defendant knew (or should have known) of the victim's vulnerability; and (3) the victim's vulnerability "facilitated the defendant's crime in some manner," *i.e.*, a nexus exists "between the victim's vulnerability and the crime's ultimate success." *Iannone*, 184 F.3d at 220 (internal quotation marks omitted). Hampton challenges each of these requirements.

## A.

First, Hampton argues that the District Court clearly erred by concluding that the conspiracy involved vulnerable victims. He contends that the fact that one victim was in a nursing home, without more, is insufficient to make that victim vulnerable. He also argues that there is no evidence that any other victim was in poor health or dire financial straits. The government disagrees, arguing that the victims were vulnerable because they could not afford to maintain or fix their properties so that they could be rented or sold.

Vulnerability refers to "the individual victims' ability to avoid the crime rather than their vulnerability relative to other potential victims of the same crime." *Zats*, 298 F.3d at 188. A vulnerable victim is a victim of the offense of conviction "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S. Sentencing Guidelines Manual § 3A1.1(b) cmt. n.2 (U.S. Sentencing Comm'n 2016). "Financial vulnerability is one way a victim can be 'otherwise particularly susceptible.'" *Zats*, 298 F.3d at 188.

The District Court did not clearly err by finding that Hampton's victims were

vulnerable. It found that many of the victims "had let the properties fall into disrepair due to specific vulnerabilities, such as financial straits, poor health, or old age."[3] App. 282. The evidence adduced at trial reinforces the Court's finding. The houses targeted by the conspirators were vacant—suggesting that their owners were absent and likely unable to take care of their properties. The government elicited testimony that the victims targeted by the conspiracy lacked the financial means to avoid the crimes. *See, e.g.*, *id.* at 130 (testimony of Iven Horne that he could not afford to take care of his grandmother's house, which was subsequently stolen by the conspirators). The District Court did not clearly err by finding that the victims were susceptible to the criminal conduct because they were unable—due to age, infirmity, lack of sophistication, or financial means—to maintain their properties in the first instance and to regain them once stolen.

## B.

Hampton next argues that, even if the victims were vulnerable, he had no knowledge of that vulnerability.[4] The government counters that the victims' vulnerability was the centerpiece of the entire conspiracy—the conspirators targeted properties that had

[3] The Court named, as one example of a vulnerable victim, an elderly woman who had moved out of her house and into a nursing home; the conspirators had then stolen the victim's vacant home. As discussed *infra*, the government conceded that Hampton lacked knowledge of the victim being elderly and in a nursing home. The record contains sufficient evidence of vulnerable victims.

[4] Hampton places much weight on the government's concession that Hampton was unaware one of his victims was in a nursing home. Although the government did so concede, the record provides sufficient evidence that Hampton knew or should have known of other victims' vulnerabilities.

5

sufficient value as to be worth stealing, but not so much value that efforts to steal them would be challenged.

Section 3A1.1(b) applies only when a defendant "knew or should have known" that a victim was vulnerable. For example, the enhancement applies "in a robbery in which the defendant selected a handicapped victim," but not when "the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile." U.S. Sentencing Guidelines Manual § 3A1.1(b) cmt. n.2 (U.S. Sentencing Comm'n 2016). "[N]egligence is a sufficient level of culpability for a § 3A1.1 enhancement." *Zats*, 298 F.3d at 189.

The District Court did not clearly err by finding that Hampton knew or should have known that he was preying upon vulnerable victims. The Court drew upon Hampton's "knowledge of the neighborhood" and "of the types of homes that were being targeted by the conspiracy," which led to the conclusion that Hampton knew or should have known that the owners were economically or otherwise vulnerable. App. 279–80. For example, the government introduced recorded calls between Hampton and his father where they discussed obtaining a house where the owner had just died, another house where the owner was disabled, and yet another house where the owner was elderly. After presiding over two trials—of Hampton and of his father, Kenneth—the District Court found that a purpose of the conspiracy was to defraud victims "who had let the properties fall into disrepair due

6

to specific vulnerabilities, such as financial straits, poor health, or old age."[5]  *Id.* at 282; *see also id.* at 278 ("[H]aving had the benefit of not one, but two trials, I think I have a pretty good feel for the conspiracy and what made it tick and why it was a plan.").  At the very least, Hampton should have known that the inability to keep up their properties made his victims susceptible to the scheme.

## C.

Finally, Hampton argues that the District Court clearly erred by concluding that the victims' vulnerability facilitated the crimes.  According to Hampton, "the victims were not necessarily unable to pay [to fight back against the conspirators] but rather it made no sense for them to pay" to regain their properties.  Br. of Appellant 39 (emphasis omitted).  The government argues that the victims' vulnerability facilitated the conspiracy because the conspirators "selected victims on the very basis of their economic vulnerability."  Br. of Appellee 32.  By picking "homes which had enough value to make the fraud worthwhile, but not so much value that the owners were people of means who would be able to defend their assets," the conspirators succeeded.  *Id.*

The victims' vulnerability must "facilitate[] the defendant's crime in some manner." *Zats*, 298 F.3d at 190.  Put another way, there must be "a nexus between the victim's vulnerability and the crime's ultimate success."  *Id.*; *see also United States v. Monostra*, 125 F.3d 183, 190 (3d Cir. 1997) (explaining that the vulnerable victim "enhancement is

---

[5] The District Court severed the trials of Kenneth and Terrell because Terrell was involved in an automobile accident shortly before the scheduled trial.

to be applied when the defendant has taken advantage of the victim's weakness").

The District Court ruled that the nexus requirement was easily satisfied. The Court found that there was an "inherent relationship between the type of homes and the types of victims who would be victimized by the scheme and the ability for the scheme to succeed and to profit its co-conspirators and perpetrators." App. 280. As the Court observed, the scheme "could only work if it targeted people who were vulnerable either for economic or medical reasons, or people who were deceased. You know, just as long as the homeowners who were targeted couldn't fight back." *Id.* at 311. The District Court's finding is supported by the record and is therefore not clearly erroneous.

## III.

For the reasons set forth above, we will affirm the District Court's judgment.