

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2007

# USA v. Rosier

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1032

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Rosier" (2007). *2007 Decisions.* Paper 1593.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1593

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 06-1032 and 06-1033
_____

UNITED STATES OF AMERICA

v.

JEFFREY LYNN ROSIER,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Nos. 05-cr-00212 and 05-cr-00352)
District Judge: Honorable A. Richard Caputo

_____

Submitted Under Third Circuit LAR 34.1(a)
February 15, 2007

Before: SMITH and FISHER, *Circuit Judges*, and DOWD,[*] *District Judge*.

(Filed: February 20, 2007 )
_____

OPINION OF THE COURT
_____

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

FISHER, *Circuit Judge*.

This case comes to us on appeal from the District Court's imposition of a 65-month term of incarceration on Jeffrey Lynn Rosier. On appeal, Rosier argues that the District Court improperly applied the vulnerable victim enhancement under § 3A1.1(b)(1) of the Sentencing Guidelines, and that it improperly sentenced him to two months above the Guidelines range without giving notice. For the reasons set forth below, we will affirm the District Court's judgment of sentence.

I.

Because we write only for the parties who are familiar with the legal and factual background to this case, we will recite only those facts necessary for our analysis. On May 27, 2005, Rosier was charged by information in the Middle District of Pennsylvania with one count of mail fraud, in violation of 18 U.S.C. § 1341. That case was consolidated with a transferred case from the Eastern District of California, where Rosier had been indicted for mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. Pursuant to a plea agreement, Rosier pleaded guilty to the information and count I of the indictment on September 7, 2005 in the District Court for the Middle District of Pennsylvania.

At the time of his change of plea hearing, Rosier provided the District Court with a statement of offense conduct admitting to creating a fraudulent scheme in which he

contacted individuals who were listed on a "lead sheet"[1] and informed them that they had won significant amounts of money, generally in overseas lotteries. He would then offer to help them collect their winnings if they would provide him with funds to launch the collection process. He further admitted that he would repeatedly contact individuals who positively responded to his schemes. Depending on each person's reaction to his offers, he would change his sales pitch, saying whatever needed to be said to that person to make a sale.

The District Court held a sentencing hearing on June 21, 2005. At sentencing, Rosier and the government stipulated that the amount of loss was $552,889.98. Based on the presentence report and its own evidence, the government argued for a two-point enhancement pursuant to § 3A1.1(b)(1) of the Sentencing Guidelines because Rosier knew or should have known that a victim of the offense was particularly vulnerable. The government based its argument on the fact that several victims were previous victims of lottery frauds, a majority of the victims were elderly, and that Rosier "reloaded" his victims, repeatedly going back to the same victims after initially being successful at extracting money from them. As evidence, the government pointed to Robert Raynor, a man who had sent Rosier 358 checks over a four-and-a-half-year period. The government provided the District Court with evidence of phone calls between Rosier and Raynor in

---

[1]The lead sheet was a list of phone numbers that was provided to Rosier by a former co-worker who had been selling lottery club memberships from his home. He told Rosier that they were "good leads."

which Rosier was attempting to persuade Raynor, who had already sent him approximately $110,000, to send an additional $7,000. In addition, the government submitted several letters, including one from Raynor's daughter who indicated that Rosier established a relationship with Raynor over the course of the four-and-a-half year period, presenting himself as someone who wanted to help Raynor provide a better life for his family.

Based primarily on Rosier's interaction with Raynor, the District Court held that at least one of Rosier's victims was particularly vulnerable. It stated that "[t]he fact of the reloading and the repeat telephone calls and the pleasant badgering that I read in the exchange between Mr. Raynor and Mr. Rosier clearly indicates to me that he understood exactly what he was doing and understood the vulnerability of Mr. Raynor in particular." As a result, the District Court applied a two-level enhancement to Rosier's sentence, placing his advisory Guidelines range between 51 and 63 months.

The District Court then addressed the factors set forth in 18 U.S.C. § 3553(a) and determined that Rosier should be sentenced to 65 months, two months above the top of the advisory Guidelines range. In support of its decision, the District Court stated that it was "shocked" by Rosier's behavior, particularly by Rosier's success at defrauding elderly people out of their life savings. In addition, the District Court found that Rosier, who had a college degree from the University of Miami and a very supportive family, was in a position to pursue a lawful career, instead of engaging his abilities to persuade people

4

in order to swindle money from them. The District Court also considered the letters from the victims and determined that there was a very serious impact on each of their lives that would be "very hard to reconcile." Based on these determinations, the District Court believed that the Guidelines range did not adequately reflect the seriousness of the offense and, as a consequence, sentenced Rosier to an additional two months.

This timely appeal followed.

II.

Rosier first contends that the District Court improperly applied the vulnerable victim enhancement pursuant to § 3A1.1(b)(1) of the Sentencing Guidelines. Section 3A1.1(b)(1) provides for a two-level enhancement "if the defendant knew or should have known that a victim of the offense was a vulnerable victim . . . ." U.S. Sentencing Guidelines Manual § 3A1.1(b)(1). Our jurisprudence dictates that a district court make three findings before applying the vulnerable victim enhancement:

> (1) the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's crime in some manner; that is, there was "a nexus between the victim's vulnerability and the crime's ultimate success."

*United States v. Iannone*, 184 F.3d 214, 220 (3d Cir. 1999) (quoting *United States v. Monostra*, 125 F.3d 183, 190 (3d Cir. 1997)). Rosier challenges the first and second prong of this analysis. We review a district court's determination that a particular victim was vulnerable for clear error. *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2002).

5

Rosier argues that the District Court impermissibly based its conclusion that his victims were particularly vulnerable on the general assumption that elderly people are more likely to fall victim to fraudulent schemes, a kind of generalization we rejected in *Zats*, *id.* at 188. However, Rosier misunderstands the basis for the District Court's grant of the enhancement. The District Court found that Raynor was a particularly vulnerable victim, not because of his age, but based on the facts that he was susceptible to Rosier's pleasant cajoling and that he had previously fallen prey to Rosier's scheme. This determination is not clearly erroneous.

In order to qualify for a vulnerable victim enhancement, a defendant need only have impacted one vulnerable victim. *Id.* at 190. Therefore, the District Court could properly base the enhancement only on Raynor so long as he was, in fact, a particularly susceptible victim. We have previously held that victims can be particularly vulnerable if they are financially insecure, sick, in a state of emergency, or otherwise susceptible to the particular kind of criminal conduct at issue. *Id.* at 187-88 (citing U.S. Sentencing Guidelines Manual § 3A1.1, cmt. n.2). In this case, Raynor was financially insecure, as evidenced by the phone conversations he had with Rosier regarding the state of his finances. In addition, as the District Court properly noted, Raynor's repeated willingness to send Rosier money despite the fact that Rosier never followed through with an actual collection showed that he was particularly vulnerable to this kind of a fraudulent scheme.

*See United States v. Brawner*, 173 F.3d 966, 973 (6th Cir. 1999) (finding that victim's repeatedly falling prey to same fraudulent scheme showed vulnerability).

Further, it was appropriate for the District Court to determine that Rosier knew or should have known that Raynor was particularly vulnerable. Under the second prong of the test we articulated in *Iannone*, there is no need for a defendant to target a victim based on his vulnerability. Rather, it is sufficient that a defendant knew or should have known of the victim's susceptibility. *United States v. Cruz*, 106 F.3d 1134, 1135 (3d Cir. 1997). "Nothing in the Guidelines requires that an offender have prior knowledge of his victim's vulnerabilities. . . . That knowledge or notice could arise during the course of an ongoing offense such as fraud." *Zats*, 298 F.3d at 190-91. The District Court properly found that during Rosier's four-and-a-half-year relationship with Raynor, Rosier must have learned that Raynor was particularly susceptible to this kind of fraudulent scheme as Rosier repeatedly contacted Raynor for additional funds. Several of our sister circuits have determined that this kind of "reloading" of victims is sufficient to prove the vulnerable victim enhancement. *See, e.g.*, *Brawner*, 173 F.3d at 973; *United States v. Coe*, 220 F.3d 573, 582 (7th Cir. 2000); *United States v. Randall*, 162 F.3d 557, 560 (9th Cir. 1998). Therefore, the District Court properly applied the vulnerable victim enhancement.

III.

Rosier's second contention is that the District Court erred by not providing notice of its intent to depart from the Guidelines pursuant to Rule 32(h) of the Federal Rules of

7

Criminal Procedure, which requires a district court to give notice before granting an upward departure under the Guidelines.[2] Rosier argues that the same kind of notice necessary for a district court to grant an upward departure under the Guidelines is required for a district court to grant an upward variance under the § 3553(a) factors. Because Rosier did not raise this argument before the District Court, we review for clear error. *United States v. Couch*, 291 F.3d 251, 252-53 (3d Cir. 2002).

Rosier's argument would fail under any standard of review as it is precluded by our recent decision in *United States v. Vampire Nation*, 451 F.3d 189 (3d Cir. 2006). In *Vampire Nation*, we considered for the first time whether a district court was required to provide advanced notice of its intent to impose a sentence that varied from the advisory Guidelines range pursuant to its newfound discretion under *United States v. Booker*, 543 U.S. 220 (2005). We stated that, under the new advisory system, defendants are aware of the factors that are present in § 3553(a) in a way that they would not be aware of a district court's reason for departing from the Guidelines under the old mandatory system. Therefore, "we perceive none of the 'unfair surprise' considerations that motivated the

---

[2]Rule 32(h) provides:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Fed. R. Crim. P. 32(h).

enactment of Rule 32(h)." *Vampire Nation*, 451 F.3d at 196. Therefore, where a district court's decision to sentence a defendant above the advisory Guidelines range is based on its discretion under *Booker* and the § 3553(a) factors, not an upward departure from the Guidelines, it is not obligated to provide the defendant with advanced notice. *Id.* at 195. The District Court, therefore, did not err when failing to provide Rosier with notice that it intended to impose an above-the-Guidelines sentence based on its consideration of the § 3553(a) factors.

For the above stated reasons, we will affirm the District Court's imposition of a 65-month sentence.