**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff–Appellee, | |
| v. | No. 10-1072 |
| | (D.C. No. 1:09-CR-00332-REB-01) |
| KRISTEN PARKER, | (D. Colo.) |
| Defendant–Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

Kristen Parker appeals her sentence, arguing that the thirty-year term of

imprisonment imposed by the district court is substantively unreasonable.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Parker was hired as a "scrub tech" at Rose Medical Center ("Rose") in October

2008.  On her first day of work, she was advised that she tested positive for hepatitis C.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Parker believes she contracted hepatitis sometime in the summer of 2008, when she was using heroin intravenously and may have inadvertently shared a syringe. She had a long history of substance abuse that began with pain medication prescribed to her in 2001 following jaw surgery, and progressed to include illegally-obtained pain medication and more powerful narcotics.

Unfortunately, Parker's substance abuse continued while she was employed at Rose. Shortly after she was hired, Parker began stealing fentanyl from operating room anesthesia carts. Fenatnyl is a controlled substance that is eighty to one hundred times more powerful than morphine. Parker would remove syringes from operating room carts, inject herself with the drug, refill the syringes with saline, then return the syringes to the carts.

In March 2009, a nurse at Rose was stuck by a syringe in Parker's pocket. A subsequent drug test of Parker came back negative. The test did not screen for fentanyl. Approximately one month later, Parker was observed acting suspiciously in an area of the hospital to which she was not assigned. Rose required her to submit to a second drug test, which did screen for fentanyl, and Parker tested positive. Parker was placed on administrative leave, and after attempting to resign, was terminated. Rose informed the Denver Police Department of its suspicion that Parker had stolen fentanyl.

After leaving Rose, Parker obtained similar employment at the Audubon Surgical Center ("Audubon"). She requested that Audubon refrain from contacting her former employer, and Audubon obliged her. Parker continued to steal fentanyl while employed

at Audubon using the same modus operandi. She was fired from Audubon just six weeks later for diverting medication.

Around the same time that Parker changed jobs, the Colorado Department of Public Health and Environment ("CDPHE") began investigating an outbreak of hepatitis C among Rose patients. CDPHE contacted Parker as part of the investigation, and Parker informed the agency that she had tested positive for hepatitis when she began working at Rose.

Parker was eventually arrested by Denver Police and charged under state law. These charges were later dismissed. On August 27, 2009, Parker was indicted on nineteen counts of tampering with a consumer product in violation of 18 U.S.C. § 1365(a)(4) and nineteen counts of obtaining a controlled substance by deception in violation of 21 U.S.C. §§ 843(a)(3) and (d)(1), and 846.

Rose and Audubon contacted all patients who could have been exposed to hepatitis C as a result of Parker's actions, a total of nearly six thousand patients. Seventeen patients contracted a strain of hepatitis C genetically linked to Parker with 97% confidence. Another seven or eight patients tested positive for hepatitis C and had no other risk factors for the illness, but genotyping and viral sequencing analysis was not conducted for this latter group.

Parker entered into a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1) under which she would plead guilty to five counts of tampering with a consumer product and five counts of obtaining a controlled substance by deception in exchange for dismissal of

the remaining charges and a stipulated sentence of 240 months' imprisonment subject to court approval. At a hearing held in January 2010, the district court rejected the plea agreement. The court informed Parker that she could withdraw her guilty plea or proceed with the knowledge that the court could sentence her to a sentence longer than twenty years. Parker maintained her guilty plea.

At Parker's sentencing hearing, the court determined that her advisory Guidelines range was 235 to 293 months. However, the court concluded that a within-Guidelines sentence would be insufficient, and imposed a term of thirty years' imprisonment, explaining its decision as follows:

> [T]he manner and circumstances in which these crimes were committed are especially aggravated, drawing such descriptors as heinous, egregious, loathsome.
>
> The repeated theft and abuse of fentanyl, one of the most puissant drugs on the planet for selfish, personal gratification to get high while exposing so many innocent, unsuspecting, undeserving people to this insidious and incurable disease is as incomprehensible as it is unconscionable.
>
> These terrible crimes with their ruinous consequences for so many are exacerbated by the nature of the drug, the number of innocent victims, the stealthful, selfish modus operandi of the defendant, and the lifelong, unforgiving, irreparable injuries and the devastating physical and emotional consequences to victims and families.
>
> Of import also is the fact that Ms. Parker didn't just quit. She got caught. She didn't wake up one morning and see or sense the proverbial light and stop in a lucid moment of conscience.
>
> She finally and thankfully got caught. In fact, the defendant's appetite for fentanyl was so intense that after she was terminated at Rose Medical Center, she simply took her surreptitious scheme down the road to Colorado Springs, to the Audubon Surgery Center where she furtively

picked up where she left off with ruinous results for unsuspecting victims.

What makes these crimes even more unthinkable is her terrible selfishness and lack of any consideration for the grave consequences to the very lives of others.

Given her knowledge of and access to sterile syringes and hypodermic needles, if she cared at all for anyone or anything other than herself, she could have stolen and used fentanyl without placing innocent surgical patients in harm's way or virtually eliminating the risks of infection. But tragically for so many she just didn't care.

For a few moments of selfish personal pleasure and relief, she callously created a lifetime of inevitable and inexorable uncertainty and worry for so many. The emotional trauma and distress is virtually ineffable.

Next, concerning the history and characteristics of Ms. Parker as the offender, I find and conclude as follows: First, I conducted an individual assessment of her and her unique circumstances and characteristics, and I have viewed her as the unique being that she is.

Ms. Kristen Parker, make no mistake, is first a young woman, a daughter, a sister, a mother. She was raised with one sibling in an intact two parent middle class family free of abuse or neglect.

She had the benefit of loving, supporting, caring parents. In fact, even now she has the benefit of their continuing love and support, although I suspect that they would rather be anyplace in this world right now than in this courthouse in this courtroom under these ignominious circumstances.

But at some point, and to her great disadvantage, she apostately abandoned the teachings of her parents to instead embrace a life dominated by drugs, which I find to be an aggravating, not a mitigating circumstance.

Addiction explains but it never excuses. Despite any addiction, Ms. Parker remains like us all, personally responsible for, not relieved of, conduct and its consequences.

Sadly, as an adult Ms. Parker's philosophy and these crimes evince a disturbing disrespect and disregard for the rights of others.

-5-

The defendant presents few special or compelling mitigating circumstances. No outstanding service to country or community. No unusually disadvantaged childhood. No overstated criminal history.

However, to her credit and in mitigation, she has cooperated extensively with the authorities since her arrest and has pledged, I believe credibly, to continue that cooperation. This inures to the benefit of both law enforcement and her victims.

Ms. Parker, however, in my view, continues disturbingly to be in a state of denial about cause and consequences. She continues to maintain incredulously to me that she didn't know that she had the hepatitis C virus, and that she understands and is truly remorseful about the terrible plight of her victims.

However, the first claim is belied by the evidence causing me to find and conclude that she knew, or that she should have known that she was infected with this incurable disease. And although she has received credit for acceptance of responsibility under the advisory sentencing guidelines, I do not yet find her to be credibly or cogently contrite.

The court entered judgment on February 24, 2010, and Parker timely appealed.

**II**

We review sentences for reasonableness, using an abuse of discretion standard. United States v. Sayad, 589 F.3d 1110, 1116 (10th Cir. 2009). Parker does not assert a procedural reasonableness argument, instead focusing solely on substantive reasonableness. "[S]ubstantive reasonableness addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Huckins, 529 F.3d 1312, 1317 (10th Cir. 2008) (quotation omitted).

Following Gall v. United States, 552 U.S. 38 (2007), we review "all sentences—

whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." Id. at 41. The district court abuses its discretion if the resulting sentence is "arbitrary, capricious, whimsical, or manifestly unreasonable." Huckins, 529 F.3d at 1317 (quotation omitted).

A district court must provide reasons for selecting a non-Guidelines sentence, but "[w]e may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo." United States v. Smart, 518 F.3d 800, 808 (10th Cir. 2008). Rather, "the weight the district court places on certain factors is reviewed for substantive unreasonableness." United States v. Pinson, 542 F.3d 822, 835-36 (10th Cir. 2008). Further, "we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Smart, 518 F.3d at 808. "[A]lthough a district court must provide reasoning sufficient to support the chosen variance, it need not necessarily provide 'extraordinary' facts to justify any statutorily permissible sentencing variance, even one as large as the 100% variance in Gall." Smart, 518 F.3d at 807. Moreover, district courts are "allowed to contextually evaluate each § 3553(a) factor, including those factors the relevant guideline(s) already purport to take into account, even if the facts of the case are less than extraordinary." Smart, 518 F.3d at 808.

### III

Parker's primary argument on appeal is that the district court weighed her

addiction in an unreasonable manner. She contends that the district court treated addiction as an aggravating rather than a mitigating factor, and ignored addiction's effects on the human brain.

We disagree with Parker's claim that the district court considered her addiction to be an aggravating factor. After noting that Parker grew up in a supportive household, the court stated: "But at some point, and to her great disadvantage, she apostately abandoned the teachings of her parents to instead embrace a life dominated by drugs, which I find to be an aggravating, not a mitigating circumstance." It is clear that the court was not referring to Parker's addiction as an aggravating factor, but to Parker's decision to reject her family's teachings in favor of a life of drug use. The court reasonably concluded that Parker's decision to turn to a life of drugs despite the existence of a loving and supportive family was aggravating. See United States v. Washington, 515 F.3d 861, 865-67 (8th Cir. 2008) (upholding an above-Guidelines sentence based in part on defendant's decision to return to a life of crime "despite enjoying an unusually supportive family"); United States v. Rosier, 218 F. App'x 182, 185-87 (3d Cir. 2007) (unpublished) (affirming above-Guidelines sentence based in part on the fact that defendant's positive family and educational background placed him "in a position to pursue a lawful career, instead of engaging his abilities to persuade people in order to swindle money from them").

The district court further stated that "[a]ddiction explains but it never excuses. Despite any addiction, Ms. Parker remains like us all, personally responsible for, not

relieved of, conduct and its consequences."  It also found that Parker "presents few special or compelling mitigating circumstances" other than her cooperation with law enforcement.

We cannot conclude that the district court's consideration of Parker's history and characteristics was unreasonable in light of the totality of the circumstances.  Defendants with substance abuse problems are no strangers to the federal courts, yet Parker's crime stands out as particularly repugnant.  Parker displayed a callous disregard for human suffering.  By stealing fentanyl from operating carts, Parker deprived surgical patients of needed anesthesia.  At least one of her victims awoke mid-surgery in severe pain.

The district court conscientiously weighed a number of factors, including Parker's background and her addiction, the manner in which the crimes were committed, the harm caused by her crime, and the large number of victims, in settling on a term of thirty years.  Parker argues that her Guidelines range already accounted for many of these factors,  but our circuit precedent is clear that district courts may independently "evaluate each § 3553(a) factor, including those factors the relevant guideline(s) already purport to take into account."  Smart, 518 F.3d at 808.  Even if we quibbled with the district court's assessment, the sentence imposed was a careful and thoughtful exercise of the court's broad discretion.  There is nothing whimsical about the facts of Parker's case, nor the sentence imposed by the district court.  See Huckins, 529 F.3d at 1317.

**IV**

Because we conclude that the sentence imposed was reasonable, we **AFFIRM**.

Entered for the Court

Carlos F. Lucero
Circuit Judge